| | |
|---|---|
| ALBERT TALONE, D.O., CRAIG WAX, D.O., RICHARD RENZA, D.O., ROY STOLLER, D.O., individually and on behalf of all others similarly situated, | 1:16-cv-04644-NLH-JS **OPINION** |
| Plaintiffs, | |
| v. | |
| THE AMERICAN OSTEOPATHIC ASSOCIATION, | |
| Defendant. | |

**APPEARANCES**:

JAMES GREENBERG
DUANE MORRIS LLP
1940 ROUTE 70 EAST
SUITE 200
CHERRY HILL, NJ 08003

SETH A. GOLDBERG
DUANE MORRIS LLP
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103

    On behalf of Plaintiffs

JACK R. BIERIG
STEVEN J. HOROWITZ
NEIL G. NANDI
SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, ILLINOIS 60603

JEFFREY WARREN LORELL
SAIBER LLC
18 COLUMBIA TURNPIKE
SUITE 200
FLORHAM PARK, NJ 07932

JEFFREY S. SOOS
JENNIFER ROSE O'CONNOR
SAIBER LLC
ONE GATEWAY CENTER
10TH & 13TH FLOORS
NEWARK, NJ 07102-5311

On behalf of Defendant

**HILLMAN**, District Judge

This case concerns antitrust and fraud claims brought by osteopathic physicians against the American Osteopathic Association for its alleged unlawful tying of board certification and professional association membership. Presently before the Court is the motion of the American Osteopathic Association to dismiss Plaintiffs' claims, or in the alternative, transfer venue to the Northern District of Illinois. For the reasons expressed below, Defendant's motion will be denied in its entirety.

**BACKGROUND**

Plaintiffs are osteopathic physicians ("DOs") who have been board certified as medical specialists by the American Osteopathic Association ("AOA"), and who have also purchased membership in the AOA. Approximately 48,000 practicing DOs are members of the AOA, and approximately 32,000 of those DOs are AOA board certified. The AOA has notified Plaintiffs and AOA board certified DOs that their board certification will be invalidated and cancelled unless they purchase annual membership

in the AOA.  Plaintiffs claim that in order to avoid the loss of their board certification, Plaintiffs and AOA board certified DOs have been forced to purchase AOA membership even though it serves no purpose with respect to, and has no actual connection with, AOA board certification or their practice as physicians.

Plaintiffs further claim that the AOA's unlawful tying arrangement has reduced the number of DOs willing to purchase membership in other professional physician associations and has thereby foreclosed competition in the market for membership in professional physician associations (the "Association Membership Market").  Plaintiffs claim that the reduction in purchases by AOA board certified DOs of non-AOA professional physician association memberships has erected barriers to entry, and thus has prevented potential rivals to the AOA from entering the Association Membership Market.  In addition, Plaintiffs claim that the AOA's unlawful tying arrangement has raised the costs faced by its existing rivals, as well as softened price competition between the AOA and its existing rivals.

By reducing competition in the Association Membership Market through its unlawful tying arrangement, Plaintiffs claim that the AOA has been able to increase the price of its annual membership dues to almost double the price that its competitors in the Association Membership Market charge for membership in their associations, and there has been a corresponding reduction

in competitive offerings.[1]  Plaintiffs further claim that there is no evidence that the AOA's tying arrangement enhances the efficiency of its product offerings, meaning there is no pro-competitive business justification for its unlawful tying arrangement.[2]

In addition to the tying arrangement, Plaintiffs claim that DOs who received their AOA board certification prior to 2000 were promised by the AOA that it was a "lifetime" certification that would never expire, and that promise was renewed in 2013, when the AOA initiated its Osteopathic Continuous Certification program ("OCC").  Plaintiffs claim, however, that the AOA knowingly concealed that lifetime certification holders would also have to purchase annual membership in the AOA to avoid the invalidation and cancellation of their prior "lifetime" certifications.

---

[1] Plaintiffs claim that the AOA's annual regular membership dues presently are $683 per year, and it is estimated that the AOA is receiving more than $20,000,000 per year by unlawfully forcing AOA membership on Plaintiffs and AOA board certified DOs under the threat of invalidating prior board certifications.  In contrast, other physician associations that provide the same benefits as the AOA membership charge $350-$525 per year.

[2] Plaintiffs allege that the services provided by the AOA membership are the same as other medical professional associations.  The benefits include continuing medical education courses, networking opportunities, information about advances in medicine, billing resources, and volume discount arrangements on things like auto insurance, car rentals, personal credit cards, and certain physician related services.

Based on the foregoing, Plaintiffs, on their own behalf and on behalf of the class and sub-classes, have brought the present action to obtain injunctive and monetary relief against the AOA for this alleged anticompetitive tying arrangement, alleging that it violates Section 1 of the Sherman Act, 15 U.S.C. § 1 ("Section 1") and Section 3 of the New Jersey Antitrust Act ("NJAA"), N.J.S.A. 56:9-3 ("Section 3"), and the New Jersey Consumer Fraud Act ("NJCFA") N.J.S.A. 56:8-1, et. seq.

The AOA has moved to dismiss Plaintiffs' claims, or in the alternative, transfer venue to the Northern District of Illinois. Plaintiffs have opposed the AOA's motion on both premises.

## DISCUSSION

### A. Subject matter jurisdiction

This Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

### B. Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well

settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v.

U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages,
Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A court in reviewing a Rule 12(b)(6) motion must only
consider the facts alleged in the pleadings, the documents
attached thereto as exhibits, and matters of judicial notice.
S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,
181 F.3d 410, 426 (3d Cir. 1999).  A court may consider,
however, "an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's
claims are based on the document."  Pension Benefit Guar. Corp.
v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.
1993).  If any other matters outside the pleadings are presented
to the court, and the court does not exclude those matters, a
Rule 12(b)(6) motion will be treated as a summary judgment
motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

### C.  Analysis

Before addressing the viability of Plaintiffs' antitrust
and fraud claims, some background information on the AOA board
certification process explained in Plaintiffs' complaint is
helpful to put Plaintiffs' claims in the proper context.

In the United States, physicians who practice medicine
either hold a Doctor of Medicine degree ("MD") or a Doctor of
Osteopathic Medicine degree ("DO").  MDs are trained in the
principles and approaches of allopathic medicine, while DOs are

trained in the principles and approaches of osteopathic medicine.

After graduating from medical school and obtaining a medical degree, and in order to practice medicine and obtain a medical license in the U.S., a physician is required to complete an accredited residency training program. The AOA is the only accrediting agency for osteopathic graduate medical education, while the American College of Graduate Medical Education ("ACGME") accredits medical residency programs traditionally filled by MD post-graduates.

Board certification is another component to practicing medicine. Board certification is the process by which a MD or DO demonstrates a mastery of basic knowledge and skills in a particular specialty. In order to obtain board certification, physicians must meet certain requirements and successfully pass a series of examinations that demonstrate their mastery of their skills in a particular medical specialty.

The AOA has established 18 Specialty Certifying Boards ("AOA Board") and the AOA's Department of Certifying Board Services ("ADCBS") to administer the process of board certification for DOs based on the principles of allopathic medicine. The American Board of Medical Specialties ("ABMS") also offers board certification to physicians in various specialties and sub-specialties. DOs who complete their

residencies at an AOA accredited program are currently not eligible for ABMS board certification. Only MDs and DOs who complete an ACGME residency are eligible to seek board certification from one of the ABMS' 24 Member Boards. Because completion of an ACGME accredited residency program is one of the prerequisites for ABMS Member Board certification eligibility, ABMS board certification is not a viable alternative for the majority of DOs who complete their residencies in an AOA certified program and thus ABMS board certification is not interchangeable with AOA board certification.[3]

In order to become board certified, the AOA charges examination, processing and administrative fees, typically in excess of $1,000. The AOA then charges an annual board certification maintenance fee. Prior to about 2000, most DOs who earned board certification from an AOA Board were promised by the AOA that it was a "lifetime" board certification. From 2000 on, most if not all AOA board certifications have had six, eight, or 10 year terms.

---

[3] In order for a DO who has completed an AOA residency program to obtain ABMS Board Certification instead of, or in addition to, AOA board certification, he or she would need to apply for, be selected for, and then complete a second residency at an ACGME accredited residency program. Completing a second residency is not an economically viable or reasonable alternative for an osteopathic physician who has already completed an AOA accredited residency program and is in active practice.

Since August 1, 2012, in addition to their annual board certification maintenance fee, the AOA has required all AOA board certified DOs to purchase and maintain annual membership in the AOA and pay the AOA's annual membership dues in order to avoid the AOA's deactivation of their AOA board certification. This requirement serves the basis for Plaintiffs' claims. As noted above, Plaintiffs claim that the AOA's tying scheme violates Section 1 of the Sherman Act, 15 U.S.C. § 1 ("Section 1") and Section 3 of the New Jersey Antitrust Act ("NJAA"), N.J.S.A. 56:9-3 ("Section 3"), and the New Jersey Consumer Fraud Act ("NJCFA") N.J.S.A. 56:8-1, et. seq.

The AOA has moved to dismiss Plaintiffs' antitrust claims because they fail to provide sufficient facts to demonstrate foreclosure of competition in the Association Membership Market or that they have suffered any antitrust injury. The AOA has moved to dismiss Plaintiffs' consumer fraud claim because it fails to meet the heightened pleading standard for fraud claims. The AOA has also moved, in the alternative, for the transfer of the case to the Northern District of Illinois. Each of the AOA's arguments will be addressed in turn.

### 1. *Plaintiffs' antitrust claims*

For plaintiffs suing under federal antitrust laws, one of the prudential limitations is the requirement of "antitrust standing." <u>Ethypharm S.A. France v. Abbott Laboratories</u>, 707

F.3d 223, 232 (3d Cir. 2013) (citing Section 4 of the Clayton
Act, which provides the statutory authorization for a private
antitrust suit); 15 U.S.C. § 15 ("[A]ny person who shall be
injured in his business or property by reason of anything
forbidden in the antitrust laws" may maintain a "private action
for treble damages.")) (other citations omitted).  It does not
affect the subject matter jurisdiction of the court, as Article
III standing does, but prevents a plaintiff from recovering
under the antitrust laws.  Id. (citation omitted).

Generally, antitrust injury – which is "'injury of the type
the antitrust laws were intended to prevent and that flows from
that which makes [the] defendants' acts unlawful'" – "'is
limited to consumers and competitors in the restrained market
and to those whose injuries are the means by which the
defendants seek to achieve their anticompetitive ends.'"  Id. at
233 (quoting Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc., 429
U.S. 477, 489 (1977)) (other citation omitted).

Establishing the requisite standing by showing an antitrust
injury thus depends upon the type of antitrust violation
alleged.  In this case, Plaintiffs allege a *per se* tying
violation, and a "rule of reason" tying violation.
"Tying is defined as selling one good (the tying product) on the
condition that the buyer also purchase another, separate good
(the tied product)."  Town Sound and Custom Tops, Inc. v.

Chrysler Motors Corp., 959 F.2d 468, 475 (3d Cir. 1992). "[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms. When such 'forcing' is present, competition on the merits for the tied item is restrained and the Sherman Act is violated." Id. at 476 (quoting Jefferson Parish Dist. No. 2 v. Hyde, 466 U.S. 2, 12 (1984)).

The U.S. Supreme Court long ago established a "*per se*" rule against tying arrangements in cases where it thought exploitation of leverage is "probable." Id. (citing Jefferson Parish, 466 U.S. at 15). "[W]here (1) a defendant seller ties two distinct products; (2) the seller possesses market power in the tying product market; and (3) a substantial amount of interstate commerce is affected, then the defendant's tying practices are automatically illegal without further proof of anticompetitive effect." Id. at 477.

While the "*per se* illegality rule applies when a business practice on its face has no purpose except stifling competition," conduct that does not trigger a *per se* analysis is analyzed under a "rule of reason" test, which focuses on the particular facts disclosed by the record to determine whether

13

the probable effect of the tying arrangement is to substantially lessen competition, rather than merely disadvantage rivals. Eisai, Inc. v. Sanofi Aventis U.S., LLC, 821 F.3d 394, 402-03 (3d Cir. 2016) (citations and quotations omitted).

Under the rule of reason test, a plaintiff must show a substantial foreclosure of the market for the relevant product. Id. (citations and quotations omitted). Although the test is not total foreclosure, the challenged practices must bar a substantial number of rivals or severely restrict the market's ambit. Id. (citations and quotations omitted). The "concern is not about which products a consumer chooses to purchase, but about which products are reasonably available to that consumer. For example, if customers are free to switch to a different product in the marketplace but choose not to do so, competition has not been thwarted - even if a competitor remains unable to increase its market share." Id. (citations and quotations omitted). However, even in cases where consumers have a choice between products, the market is foreclosed if the defendant's anticompetitive conduct renders that choice meaningless. Id. (citations and quotations omitted).

Here, the AOA contends that Plaintiffs have failed to plead an antitrust injury because Plaintiffs are not competitors of the AOA who have lost members due to the AOA's alleged anticompetitive actions. The AOA further argues that

Plaintiffs' claims that they purchased AOA memberships even though they did not want AOA memberships is not sufficient to show that the AOA possesses market power over the Association Membership Market, or that the AOA has foreclosed other association membership organizations from competition, both of which are fatal to Plaintiffs' antitrust claims.

Plaintiffs counter that their injuries are not as simple as characterized by the AOA.  Plaintiffs claim that AOA board certified DOs have no choice but to purchase AOA memberships because they would lose their board certifications if they did not purchase AOA memberships.  Plaintiffs claim that even though they have the option of choosing another association membership, and they would want to choose a different, less costly membership, it is a meaningless choice because (1) they would lose AOA certification and have to repeat the very time consuming and expensive residency and board certification process with the ACGME and ABMS, or (2) purchase a second association membership, which is an additional yearly expense and duplicative of many of the AOA membership benefits. Plaintiffs further claim that the AOA's tying arrangement and the resulting lack of AOA board certified DOs' meaningful choice forecloses competition from other membership associations. Plaintiffs also claim that the AOA's tying arrangement allows

the AOA to inflate the price of its membership to almost double the cost of other physician association memberships.

The Court finds at this pleading stage that Plaintiffs have sufficiently stated claims for *per se* and "rule of reason" antitrust violations.  Plaintiffs have pleaded that 32,000 AOA board certified DOs from around the country have no choice but to purchase AOA memberships that cost significantly more than other physician association memberships with similar benefits, resulting in almost $9 million in dues since August 2012, and preventing other membership associations from competing for those DOs' business.  Plaintiffs have also pleaded that they would choose a different membership association if they were not tied to the AOA membership.[4]  These allegations, when taken as true, show that the AOA ties two distinct products, it has market power in the tying product market, and it affects a substantial amount of interstate commerce.  Moreover, when accepted as true, these allegations show that the AOA's tying

---

[4] The AOA argues that Plaintiffs' single averment in their complaint that "many AOA board certified DOs forego purchasing memberships in other professional physician associations" (Docket No. 18 at 30, ¶ 107), is a barebones conclusion that does not meet the Twombly/Iqbal pleading standard.  The Court disagrees.  Even though at a later stage in the case Plaintiffs must present evidence to support that contention, Plaintiffs' averment as pleaded is not a legal conclusion, but rather a statement of fact, which when accepted as true, supports their antitrust violation claims.

arrangement substantially lessens the competition so that other professional association membership organizations are foreclosed from competing for AOA board certified DOs' business.[5]

Consequently, the factual underpinning of Plaintiffs' antitrust claims are sufficiently pleaded to move forward with discovery. The AOA's motion to dismiss Counts I through IV of Plaintiffs' complaint must be denied.[6]

### 2. *Plaintiffs' NJCFA claim (Count V)*

Plaintiffs claim that DOs who received their AOA board certification prior to 2000 were promised by the AOA that it was a "lifetime" certification that would never expire, and that promise was renewed in 2013, when the AOA initiated its

---

[5] The 16,000 AOA members without AOA board certification who chose to purchase AOA memberships over other physician association memberships are not handcuffed to AOA memberships like AOA board certified DOs. It appears that their claim is that the AOA's market control over the tied DOs allows the AOA to inflate its membership cost and shut out competition, which then in turn injures non-board-certified AOA members because they have paid inflated costs due to the softened competition – in other words, increased pricing, without any offsetting pro-competitive benefit. These allegations are also sufficient to state a "rule of reason" antitrust claim.

[6] Because "'the New Jersey Antitrust Act shall be construed in harmony with ruling judicial interpretations of comparable federal antitrust statutes,'" Eisai, Inc. v. Sanofi Aventis U.S., LLC, 821 F.3d 394, 403 (3d Cir. 2016) (quoting State v. N.J. Trade Waste Ass'n, 472 A.2d 1050, 1056 (N.J. 1984)), Plaintiffs' claims based on New Jersey's antitrust laws may proceed for the same reasons as Plaintiffs' claims based on federal law.

Osteopathic Continuous Certification program ("OCC"). In 2013, the AOA issued a brochure to "lifetime" board certification holders that stated,

> If you have a lifetime certification, you will not be required to participate in OCC at this time. We do strongly encourage your participation, particularly as more states begin to require a maintenance of certification process in order to maintain licensure.

(Docket No. 16 at 20, ¶ 114.)

Plaintiffs claim, however, that the AOA knowingly concealed that lifetime certification holders would also have to purchase annual membership in the AOA to avoid the invalidation and cancellation of their prior "lifetime" certifications. Plaintiffs claim that this deception constitutes a violation of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-2.

A claim under NJCFA must meet the Federal Civil Procedure Rule 9(b) heightened pleading standard. Frederico v. Home Depot, 507 F.3d 188, 202-03 (3d Cir. 2007). To satisfy this standard, the plaintiff must "plead the date, time, and place of the alleged fraud, or otherwise inject precision into the allegations by some alternative means," so that the defendant is placed on notice of the precise misconduct with which it is charged. In re Riddell Concussion Reduction Litig., 77 F. Supp. 3d 422, 433 (D.N.J. 2015).

The NJCFA imposes liability on any person who uses: "any unconscionable commercial practice, deception, fraud, false

pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission." N.J.S.A. 56:8-2. Consumer fraud violations are divided broadly into three categories: affirmative acts, knowing omissions, and regulatory violations. International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc., 929 A.2d 1076, 1086 (N.J. 2007) (quotations and citation omitted). To state a NJCFA claim, a plaintiff must allege three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiffs' ascertainable loss. Id. (quotations and citation omitted).

The AOA argues that Plaintiffs' NJCFA claim fails because in August 2012, "lifetime" board certified DOs were aware of the AOA's new rule that AOA board certified DOs were required to purchase AOA memberships in order to retain their board certifications, and it is not actionable fraud that that AOA did not remind them of this requirement in its 2013 brochure.

The AOA's view of what the "lifetime" board certification holders knew cannot defeat Plaintiffs' NJCFA claim as it is pleaded. The "lifetime" Plaintiffs allege that when they obtained their "lifetime" status, AOA membership was not a requirement to maintain their board certification. In a

publication issued to all "lifetime" board certification holders titled, "Introduction to the AOA Osteopathic Continuous Certification Process," the AOA informed them in unambiguous wording, "If you have a lifetime certification, you will not be required to participate in OCC at this time." Plaintiffs claim the AOA knew that "lifetime" board certification holders would rely upon this statement, and the AOA knowingly and intentionally omitted that the AOA was nonetheless going to require "lifetime" board certification holders to purchase membership in the AOA in order to avoid the deactivation of their "lifetime" board certifications, causing them injury in having to purchase AOA memberships.

These allegations satisfy the Rule 9(b) heightened pleading standard and state a viable NJCFA claim. Accordingly, the AOA's motion to dismiss Plaintiffs' count alleging NJCFA violations must be denied.

### 3. *Whether the action should be transferred to the Northern District of Illinois*

The AOA argues that this case should be transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The goals of 28 U.S.C. §

1404(a) are "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (citation omitted).  The burden is on the moving party to establish the need for a transfer.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

In considering a § 1404(a) motion, a court must take into account public and private interests in determining whether transfer is appropriate.  Jumara, 55 F.3d at 879.  The private interests are:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879 (citations omitted). The public interests are:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (citations omitted).

Although a plaintiff's choice of forum is not entitled to dispositive weight in the § 1404(a) calculus, it is black-letter

law that "'the plaintiff's choice of venue should not be lightly disturbed.'"  <u>Yocham v. Novartis Pharmaceuticals Corp.</u>, 565 F. Supp. 2d 554, 557 (D.N.J. 2008) (quoting <u>Jumara</u>, 55 F.3d at 879) (other citations omitted).  "Indeed, in light of the paramount consideration accorded to a plaintiff's choice of venue, courts in this district have recognized that unless the balance of inconvenience of the parties is strongly in favor of Defendant, [Plaintiff's] choice of forum should prevail."  <u>Id.</u> (citations and quotations omitted).

In this case, the only factor in the AOA's favor is its own desire to litigate in the Northern District of Illinois.  All other relevant factors favor Plaintiffs:  Plaintiffs' choice of forum is New Jersey; even though the AOA's policy of tying board certification with AOA membership arguably took place at its headquarters in Illinois, the effect of that policy has been felt by 32,000 AOA board certification holders residing throughout the country, with thousands located in New Jersey; the AOA is not financially incapable of litigating in New Jersey, while forcing Plaintiffs to litigate in Illinois could cost more than their individual recovery and hinder their medical practices; even though some witnesses and documents are located in Illinois, there is no indication that those witnesses will not voluntarily travel to New Jersey or that those documents cannot be sent, by paper copy or electronically, to

New Jersey[7]; the judgment would be enforceable in New Jersey; and the Northern District of Illinois is not any less busy than this Court.

This case is not similar to cases cited by the AOA to support its position. For example, the AOA cites to this Court's decision in Culp v. NFL Productions LLC, 2014 WL 4828189, at *4 (D.N.J. 2014) for the proposition that in class action cases a plaintiff's choice of forum is entitled to less deference. Even though that proposition is generally true, the Court's decision based on non-neutral dispositive factors for transferring the action to the District of Minnesota under § 1404(a) did not hinge on that general proposition, but instead was based on the fact that (1) three similar opt-out cases were pending there, (2) only one of the nine plaintiffs resided in New Jersey, with the others from across the country, (3) no other similarly situated plaintiffs resided in New Jersey, and (4) although NFL Films was produced in New Jersey, the plaintiffs' claims concerned images that were aired world-wide. Moreover, on the plaintiff's-choice-of-forum factor, this Court

_____

[7] Plaintiffs point out in their complaint that AOA executive leadership resides in various states other than Illinois. The complaint relates that 27 of 28 AOA Board of Trustee members live outside of Illinois, including the current membership chair, almost half live in New Jersey, Pennsylvania and other East Coast states, two executive directors live in Virginia and New York, and 16 of 18 AOA Bureau of Osteopathic Specialists live outside of Illinois, with five on the East Coast.

found that it actually weighed in the plaintiffs' favor, although not significantly enough to be singularly dispositive to the transfer analysis.  <u>Culp</u>, 2014 WL 4828189, at *5.

Here, in contrast, the AOA has not identified related actions pending in the Northern District of Illinois, the AOA's alleged anti-competitive actions are directed to and felt in New Jersey, three of four Plaintiffs are citizens of New Jersey and maintain practices in New Jersey, the other Plaintiff lives and practices two miles away in Philadelphia, and, according to Plaintiffs' complaint, thousands of similarly situated class members live and practice in New Jersey.

The AOA also cites <u>Association of American Physicians & Surgeons, Inc. v. American Bd. of Medical Specialties</u>, 2014 WL 1334260 (D.N.J. 2014) to support its transfer argument because that court transferred, under § 1406(a), a case against the Illinois-based American Board of Medical Specialties ("ABMS") to the Northern District of Illinois on the plaintiff's claims that ABMS's new board recertification program violated § 1 of the Sherman Act.  Even though the court transferred the action, it did so in lieu of dismissal after finding that venue was improper under 28 U.S.C. § 1391(b) because ABMS did not transact business in New Jersey as defined by the § 12 of the Clayton Act, and because all the substantial events underlying the plaintiff's claims occurred outside New Jersey.  <u>AAPS</u>, 2014 WL

1334260, at *7.  Here, AOA does not argue that venue is improper

under 28 U.S.C. § 1391 or § 12 of the Clayton Act, and it merely

seeks transfer for its convenience rather than to challenge the

propriety of venue in this Court.

In short, the AOA's preference to transfer this action to

the Northern District of Illinois does not meet the purpose of §

1404(a), and its arguments cannot override the paramount

consideration accorded to Plaintiffs' choice of venue.

Accordingly, the AOA's request to transfer this case must be

denied.

## CONCLUSION

For the foregoing reasons, the AOA's motion to dismiss

Plaintiffs' antitrust and NJCFA claims must be denied.  The

AOA's alternative relief seeking the transfer of the action to

the Northern District of Illinois must also be denied.  An

appropriate Order will be entered.


Date:  ___June 12, 2017___          ___s/ Noel L. Hillman___
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.