# EXHIBIT A

**DUANE MORRIS LLP**
A DELAWARE LIMITED LIABILITY
  PARTNERSHIP
Wayne A. Mack, Esquire (*pro hac vice*)
Seth A. Goldberg, Esquire (NJ 1542004)
30 South 17th Street
Philadelphia, PA 19103
215.979.1000 (Phone)
215.979.1020 (Fax)
WAMack@duanemorris.com
SAGoldberg@duanemorris.com

James Greenberg, Esquire (NJ 217131965)
1940 Route 70 East, Suite 200
Cherry Hill, NJ 08003
856.874.4208 (Phone)
856.424.4446 (Fax)
JGreenberg@duanemorris.com
*Attorneys for Plaintiffs*

**SIDLEY AUSTIN LLP**
Jack R. Bierig (jbierig@sidley.com)
Steven J. Horowitz (shorowitz@sidley.com)
David Geiger (dgeiger@sidley.com)
Neil G. Nandi (nnandi@sidley.com)
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
(312) 853-7036 (Fax)

**SAIBER LLC**
Jeffrey W. Lorell (jlorell@saiber.com)
Jeffrey S. Soos (jsoos@saiber.com)
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
(973) 622-3333
(973) 622-3349 (Fax)
*Attorneys for Defendant*

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALBERT TALONE, D.O., CRAIG WAX, D.O., RICHARD RENZA, D.O., and ROY STOLLER, D.O., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No.: 1:16-cv-04644-NLH-JS |
| v. | |
| THE AMERICAN OSTEOPATHIC ASSOCIATION, | |
| Defendant. | |

## JOINT BRIEF IN SUPPORT OF MOTION FOR CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF SETTLEMENT, AND APPROVAL OF CLASS NOTICE

**<u>TABLE OF CONTENTS</u>**

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................2

I.      Summary of Plaintiffs' Allegations and AOA's Responses ...............................2

II.     History of this Action...........................................................................................4

III.    The Settlement .....................................................................................................5

        A.      The Settlement Class and Sub-Classes ..................................................... 6

        B.      Injunctive Relief........................................................................................ 6

        C.      Dismissal with Prejudice and Release of Claims...................................... 8

        D.      Attorneys' Fees and Incentive Awards ..................................................... 9

        E.      Notice......................................................................................................... 9

        F.      Objections ................................................................................................ 10

ARGUMENT ...............................................................................................................10

I.      The Proposed Settlement Class and Sub-Classes Should, For Settlement Purposes,
        Be Provisionally Certified Pursuant To Rule 23................................................10

        A.      The Proposed Settlement Class and Sub-Classes are so Numerous That it is
                Impossible to Bring All Class Members Before This Court................................. 12

        B.      The Class Representatives and the Proposed Settlement Class and Sub-
                Classes Share Common Legal and Factual Questions........................................... 13

        C.      The Class Representatives' Claims Are, For Settlement Purposes Only,
                Sufficiently Typical of the Claims of the Members of the Proposed
                Settlement Classes ................................................................................... 14

        D.      Proposed Lead Class Counsel and Class Representatives Will Fairly and
                Adequately Protect the Interests of the Proposed Settlement Class and Sub-
                Classes......................................................................................................... 15

        E.      The Proposed Settlement Class and Sub-Classes Meet the Requirements of
                Rule 23(b)(2)............................................................................................. 15

II.     Preliminary Approval Should be Granted Because the Settlement is Fair and
        Reasonable ....................................................................................................................17

        A.      The Settlement Achieves an Excellent Result for the Settlement Class and
                Sub-Classes, Particularly Given the Expense, Duration, and Uncertainty of
                Continued Litigation: Girsh Factors One, Four, Five, and Six ........................... 19

        B.      The Settlement is the Result of Thorough Arm's-Length Negotiations
                Conducted by Highly Experienced Counsel: Girsh Factors Three, Seven,
                Eight, and Nine ................................................................................................... 21

III.    This Court Should Appoint Plaintiffs' Counsel as Lead Class Counsel...........................23

IV.     The Court Should Approve the Form and Manner of Notice to the Members of the
        Settlement Class.............................................................................................................24

        A.      The Proposed Methods for Providing Notice Meet the Requirements for
                Approval ............................................................................................................. 25

        B.      The Content of the Proposed Notice Meets the Requirements for Approval ....... 25

CONCLUSION...................................................................................................................27

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*In re Aetna UCR Litigation*, 2013 WL 4697994 (D.N.J. Aug. 30, 2013)......................................18

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................11

*Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*, 568 U.S. 455 (2013) ...............................11

*Baby Neal for and by Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994).......................................... 13-16

*In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013).......................................... 25-26

*Beneli v. BCA Fin. Services, Inc.*, 324 F.R.D. 89 (D.N.J. 2018) ...................................................17

*Clarke v. Lane*, 267 F.R.D. 180 (E.D. Pa. 2010) .........................................................................13

*Comcast Corp v. Behrend*, 569 U.S. 27, 38 (2013) ......................................................................20

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)..........................................................................22

*E.E.O.C. v. Com. of Pa.*, 772 F. Supp. 217 (M.D. Pa. 1991), *aff'd sub nom. Binker v. Com. of Pa.*, 977 F.2d 738 (3d Cir. 1992)..........................................................................22

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).........................................................................*Passim*

*Grunewald v. Kasperbauer*, 235 F.R.D. 599 (E.D. Pa. 2006) ......................................................24

*Henderson v. Volvo Cars of N.A., LLC*, CIV.A. 09-4146 CCC, 2013 WL 1192479 (D.N.J. Mar. 22, 2013).............................................................................................11, 17, 21

*Inmates of the Northumberland County Prison v. Reish*, 08-CV-345, 2011 WL 1627951 (M.D. Pa. Apr. 29, 2011)...................................................................................23

*In re Ins. Brokerage Antitrust Litig.*, CIV.A. 04-5184 (GEB), 2007 WL 2589950 (D.N.J. Sept. 4, 2007), *aff'd*, 579 F.3d 241 (3d Cir. 2009)......................................................11

*In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467 (D.N.J. 2012) .........................11

*Jones v. Com. Bancorp, Inc.*, 05-5600 RBK, 2007 WL 2085357 (D.N.J. July 16, 2007) ................................................................................................................ 14, 17-18

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)........................................19

*In re Merck & Co., Inc. Vytorin ERISA Litigation,* 2010 WL 547613 (D.N.J. Feb. 9, 2010) ..................................................................................................................22

*Pastrana v. Lane*, CIV.A. 08-468, 2012 WL 602141 (E.D. Pa. Feb. 24, 2012)....................19, 23

*Pro v. Hertz Equip. Rental Corp.*, CIV A 06-CV-3830 DMC, 2008 WL 5218267
(D.N.J. Dec. 11, 2008) ...................................................................................16

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283
(3d Cir. 1998) ........................................................................................12, 15

*In re Prudential Ins. Co. of Am. Sales Practices Litig*, 962 F. Supp. 450 (D.N.J.
1997) ..............................................................................................................22

*In re Rent-Way Sec. Litig.,* 305 F. Supp. 2d 491 (W.D. Pa. 2003) ...............................21

*In re Sch. Asbestos Litig.*, 921 F.2d 1330 (3d Cir. 1990)............................................17

*Singleton v. First Student Management LLC*, 2014 WL 3865853 (D.N.J. Aug. 6,
2014) ......................................................................................................... 18-19

*Smith v. DaimlerChrysler Services N.A., LLC*, CIV.A.00-CV-6003-DMC, 2005
WL 2739213 (D.N.J. Oct. 24, 2005)..............................................................16

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001)........................................... 12-13, 16

*Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) ...........22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .......................................11, 16, 26

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)................... *Passim*

*Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975).....................................16

*Williams v. City of Philadelphia*, CIV.A. 08-1979, 2011 WL 3471261 (E.D. Pa.
Aug. 8, 2011) ...........................................................................................19, 23

*Williams v. Jani-King of Philadelphia Inc.*, 837 F.3d 314 (3d Cir. 2016)....................12

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86 (3d Cir.
1985) ......................................................................................................... 24-25

*Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397 (D.N.J. 1990) ..........................12

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................................... *Passim*

Fed. R. Civ. P. 23(a)(1)............................................................................................12

Fed. R. Civ. P. 23(a)(2)..................................................................................... 13-14

Fed. R. Civ. P. 23(a)(3)............................................................................................14

Fed. R. Civ. P. 23(a)(4)................................................................................15

Fed. R. Civ. P. 23(b)(2)..........................................................................*Passim*

Fed. R. Civ. P. 23(c)(1)(B) ........................................................................23

Fed. R. Civ. P. 23(c)(2)..........................................................................24-26

Fed. R. Civ. P. 23(c)(5)................................................................................11

Fed. R. Civ. P. 23(e) ...................................................................................24-25

Fed. R. Civ. P. 23(g) .............................................................................23-24

New Jersey Antitrust Act ..............................................................................14

N.J. Stat. § 56:8-1 ..................................................................................1, 14

Sherman Antitrust Act ..................................................................................14

1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions (5th ed. 2005) ................................................................................*Passim*

6A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1522 (2d ed. 1990)...............................................................17

Manual for Complex Litigation (Fourth) (2004).......................................*Passim*

Plaintiffs Albert Talone, D.O., Craig Wax. D.O., Richard Renza, D.O., and Roy Stoller, D.O. (the "plaintiffs" or "Class Representatives") and defendant American Osteopathic Association ("AOA"), hereby move for preliminary approval of a proposed settlement of this litigation (the "settlement"), certification of a Settlement Class and Sub-Classes (defined below), appointment of plaintiffs' counsel as Lead Class Counsel, and authorization of the issuance of Notice of Settlement (the "Notice").  In support of this motion, the parties state as follows.

## PRELIMINARY STATEMENT

This action asserts violations of federal and state antitrust laws arising out of the AOA's policy of conditioning certification by one of the AOA's 18 specialty medical boards on membership in the AOA (the "Challenged Rule").  In addition, plaintiffs allege that omissions made by the AOA pertaining to "lifetime" membership in the AOA were fraudulent and violated the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1 *et seq*.  AOA denies that the Challenged Rule violates the federal or state antitrust laws in that it does not suppress competition in any relevant market.  AOA further denies that any statements or omissions by it were fraudulent or otherwise in violation of law.

After the Court denied AOA's motion to dismiss plaintiffs' Amended Complaint [ECF No. 30], it soon became apparent to the parties that, unless settled, this action would be exceedingly costly for both sides and uncertain as to outcome.  Pursuant to an Order issued by Magistrate Judge Schneider, dated September 27, 2017 [ECF No. 56], the parties entered into settlement negotiations mediated by Judge Schneider.  Those negotiations spanned a period of approximately four months from October of 2017 to February of 2018.  They concluded with an agreement in principle on substantive terms.  The parties then negotiated and agreed, in mid-March 2018, upon the amount of counsel fees and expenses that may, subject to Court approval,

be awarded to plaintiffs' counsel.  They also agreed on the Settlement Agreement attached as Exhibit A.

As discussed below, both sides to this litigation believe that the settlement is fair, reasonable, and adequate.  If approved, it will provide significant benefits to the Settlement Class and Sub-Classes—including the permanent rescission of the Challenged Rule and various benefits to members of the class—in exchange for dismissal with prejudice of plaintiffs' claims against the AOA and a release of all claims that were brought or could have been brought by members of the Settlement Class and Sub-Classes, including any claims for damages.  The settlement relieves AOA of the massive potential costs of litigation of this case and of other cases that might be brought by members of any settlement class or sub-class.  The parties respectfully submit that the settlement satisfies the requirements of Fed. R. Civ. P. 23(a) and (b)(2).

For these reasons, as discussed more fully below, the Court should certify the Settlement Class and Sub-Classes, preliminarily approve the settlement, appoint plaintiffs' counsel as Lead Class Counsel, and authorize the issuance of the Notice.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Summary of Plaintiffs' Allegations and AOA's Responses

Plaintiffs allege that the Challenged Rule is an unlawful tying arrangement in that it requires osteopathic physicians ("DOs") to be members of AOA in order to be certified by a certifying Board associated with AOA.  They contend that, absent the Challenged Rule, DOs would join other professional associations such as the American Medical Association in preference to the AOA.  The AOA denies that other professional associations offer membership benefits that are similar to, or are interchangeable with, the benefits that the AOA offers to its members.  The AOA contends that the Challenged Rule does not suppress competition because

2

AOA does not compete with other associations – and DOs who join AOA in order to be Board certified would not join the AMA or other associations in the absence of the Rule.

Plaintiffs assert that the Challenged Rule has allowed the AOA to raise the price of its annual dues to supra-competitive levels.  AOA denies this assertion and notes that AOA dues are set by the members themselves.  AOA members, who pay the dues, have absolutely no incentive to set dues at supra-competitive levels.  Plaintiffs' antitrust claims required plaintiffs to engage an economist to analyze the questions whether a market for professional physician association membership ("AMM") exists, and, if so, whether the Challenged Rule injured competition in that market.

In addition to their antitrust claims, plaintiffs have alleged fraud by the AOA. Specifically, they assert that many DOs received AOA Board certification that was characterized as "lifetime certification" – and that conditioning continued certification on membership in the AOA is inconsistent with that characterization.  AOA responds that it has required AOA membership as a condition of certification since the inception of the certification program in the 1930s and that all DOs who received "lifetime certification" understood that, in order to maintain that certification, they would have to remain members of AOA.  Plaintiffs further assert that "lifetime certification" is inconsistent with a requirement of recertification that AOA subsequently imposed.  AOA responds that implementation of a recertification program does not take away certification; it simply prevents certified DOs from claiming that they have been recertified.  AOA further asserts that the requirement of recertification was imposed to protect patients from certified physicians who do not keep current with constantly evolving knowledge and who do not maintain their skills over time.

The Amended Complaint [ECF No. 16] asserts that anyone who purchased AOA membership since August 1, 2012 was damaged by the Challenged Rule's violation of the antitrust laws, and that any DO who obtained a "lifetime" AOA board certification was defrauded by the AOA.  The AOA denies that it violated any laws and further denies that any member of the purported class was damaged by its actions.  It further asserts that the purported class does not meet the requirements for class certification set forth in Rule 23.

II.    **History of this Action**

Plaintiffs and their counsel began investigating plaintiffs' claims in February 2016, and filed their original Class Action Complaint on August 1, 2016.  *See*, Exhibit B, Goldberg Certification at ¶¶ 6-8 (hereafter "Goldberg Cert."); *see also* ECF No. 1.  Upon receiving defendant's motion to dismiss that complaint for failure to state a claim and to transfer this action [ECF No. 15], and after amending their allegations in response thereto, plaintiffs filed their Amended Complaint on October 21, 2016.  *See* ECF No. 20.

On November 23, 2016, the AOA filed a motion to dismiss or transfer the Amended Complaint [ECF No. 20]. On June 12, 2017, the Court denied the AOA's motion to dismiss or transfer the Amended Complaint in its entirety. *See* ECF No. 29.  Discovery ensued.  Over the next several months, the parties exchanged initial disclosures and engaged in written discovery, including service of third-party discovery by plaintiffs. The parties briefed and argued various discovery-related disputes.  Judge Schneider denied plaintiffs' efforts to engage in third-party discovery.

On August 16, 2017, Judge Schneider conducted a Rule 16 Scheduling Conference.  On August 17, he issued an Order denying the AOA's request to bifurcate class certification discovery and merits discovery, and directed plaintiffs to serve the AOA with a request for "the

'core' information plaintiffs need to make a meaningful settlement demand regarding economic and non-economic issues." *See* ECF No. 42.

On September 27, 2017, Judge Schneider conducted a teleconference with the parties and then issued an Order that (i) stayed all scheduling deadlines; (ii) required the AOA to produce certain additional internal documents that would help facilitate settlement; and (iii) scheduled *ex parte* telephone conferences with each party in advance of the first settlement conference between the parties on October 27, 2017. *See* ECF No. 56.

Following that first settlement conference, which was mediated by Judge Schneider, all discovery and deadlines in the action remained stayed, and the parties engaged in protracted, arm's-length negotiations, all mediated by Judge Schneider. Those negotiations culminated in an agreement in principle on substantive terms being reached on February 16, 2018. Subsequently, and again mediated by Judge Schneider, the parties negotiated counsel fees, incentive awards, and the expenses of the settlement. An agreement in principle on those terms was reached on March 9, 2018.

The settlement was conditioned upon a resolution approving the settlement by the AOA's Board of Trustees and on agreement by the AOA House of Delegates to the dues decrease which is part of the proposed settlement. The AOA Board of Trustees approved the settlement on approximately May 7, 2018, contingent of approval of the proposed dues decrease by the AOA House of Delegates. On July 22, the House of Delegates approved the dues decrease.

III.    **The Settlement**

The key components of the settlement are discussed below.

A.     **The Settlement Class and Sub-Classes**

The Settlement Class is defined as:

> All persons who were members of the AOA (regardless of
> membership category) and all persons or entities who paid dues on
> behalf of anyone who was a member of the AOA at any time since
> August 1, 2012.

The settlement sub-classes are comprised of: (i) an "AOA Board-Certified Sub-Class" comprised

of all members of the Settlement Class that have held AOA Board certifications since August 1,

2012; and (ii) a "Lifetime Sub-Class" comprised of all members of the Settlement Class who

received "lifetime" board certification (collectively, the "Settlement Class and Sub-Classes").

B.     **Injunctive Relief**

The parties have agreed to the following injunctive relief:

- Rescission of the Challenged Rule: No later than the Effective Date (as defined in
  the Settlement Agreement), the AOA shall permanently decouple AOA Board
  certification from membership in the AOA, such that, as of the Effective Date,
  AOA Board certification shall no longer be conditioned upon membership in the
  AOA;

- Suspension of Board Certification Maintenance Fee: The AOA shall, for the
  period from June 1, 2019 through May 31, 2022, terminate the Certification
  Maintenance Fee (currently $90) that the AOA currently charges AOA Board-
  certified DOs—with AOA having the right to reinstate a Certification
  Maintenance Fee at any time after May 31, 2022, if so determined by the AOA
  House of Delegates;

- Dues Reduction: The AOA Board of Trustees ("BOT") shall recommend to the
  AOA House of Delegates ("HOD") that the HOD approve (1) a $90 reduction in
  the annual membership dues for Annual Regular Membership, which is currently
  $683 for the period from June 1, 2019 through May 31, 2020; and (2) a resolution
  that the Annual Regular Membership dues will not be increased over that reduced
  amount for the period from June 1, 2020 through May 31, 2022, provided that,

assuming that the HOD accepts this recommendation, the level of Annual Regular Membership dues beginning June 1, 2022 shall be determined by the HOD, in accordance with the AOA's Constitution and Bylaws;

- Lifetime Certification Holders: The AOA will not require Board-certified DOs who received "lifetime" Board certification to participate in Osteopathic Continuous Certification ("OCC") or to remain members of the AOA.  However, to maintain lifetime certification, a DO will continue to be required to maintain a license to practice in good standing in the state or other jurisdiction in which the physician practices, satisfy specialty specific Continuing Medical Education requirements identified by the certifying Board, and not be cited for unethical or unlawful conduct.  Lifetime certificants who choose not to participate in OCC can claim to be certified but cannot hold themselves out as recertified or as otherwise participating in continuing certification;

- Continuing Medical Education ("CME"): The AOA shall, for the period from January 1, 2019 through December 31, 2021, make available to all AOA members who purchase Annual Regular Membership two courses from the online CME programming on a complimentary basis, subject to an aggregate maximum of 12 CME credits each calendar year;

- CME Acceptance for AOA Membership: The AOA shall recognize accredited CME whether taken in person or online, for purposes of maintaining membership in the AOA.  The AOA shall not adopt membership requirements based on the number of CME credits that may be taken online versus the number of CME credits that must be taken in person.  However, the AOA and AOA specialty Boards may lawfully set and enforce requirements for the number and nature of CME credits that must be obtained to maintain AOA Board certification;

- No Enforcement of CME Requirements for Non-Board Certified DO Members: The AOA may maintain CME requirements as aspirational goals for members. However, physicians will not lose membership in the AOA as a result of failing to meet the CME requirement, provided that the physicians meet the CME requirements for the state(s) in which they practice;

- <u>Osteopathic Awareness Campaign Expenditures</u>: The AOA shall, for the June 1, 2019-2020 and June 1, 2020-2021 Fiscal Years, provide funding of not less than $2 million per fiscal year for the D.O. Osteopathic Physician Brand Awareness Campaign, which refers to the campaign to take "osteopathic medicine to a wide audience," described in detail on the AOA's website at: http://www.osteopathic.org/inside-aoa/about/Pages/doctors-that-DO-campaign.aspx;

- <u>Establishment of Independent/Private Practice DO Task Force</u>: The AOA shall establish a task force comprised of between five and seven members consisting of independent private practice DOs or DOs who practice in an independent private practice DO group, all of whom are engaged in direct patient care. The membership of this task force will be determined at the sole discretion of the AOA Board of Trustees as long as the members meet the above qualifications. The task force will be treated like any other task force of the AOA. This task force shall be established for a minimum of three years.

- <u>Costs of Notice</u>. The AOA shall bear the costs relating to notice to the Settlement Class and Sub-Classes.

**C.     Dismissal with Prejudice and Release of Claims**

In exchange for the above benefits, the settlement provides for the dismissal with prejudice of the claims asserted in this action, and that all members of the Settlement Class and Sub-Classes will fully release the AOA from all federal and state law claims, including claims for damages, that could have been asserted in this action, including but not limited to claims that result from, relate to, or arise out of (i) the Challenged Rule, and (ii) any alleged or actual misstatements or omissions concerning the "lifetime" nature of the AOA Board certifications

originally characterized as "lifetime" certification. Goldberg Cert., at ¶ 16.  The release does not, however, include claims against the AOA that are completely unrelated to the Released Claims.[1]

### D.    Attorneys' Fees and Incentive Awards

The Settlement Agreement provides for an award of attorneys' fees and costs to Plaintiffs' counsel in an amount not to exceed $2,617,000, and provides for incentive fees of up to $15,000 to be awarded to each of the Class Representatives, which incentive fees are to be paid from the amount of attorneys' fees awarded.  Such attorneys' fee and incentive fee awards are subject to Court approval.

### E.    Notice

Notice of the settlement that satisfies the requirements of Rule 23 will be provided to the members of the Settlement Class and Sub-Classes. Under the terms of the settlement, the AOA will facilitate Notice in accordance with notice procedures set out in further detail in the Settlement Agreement (the "Notice Program"), and the AOA shall have the discretion whether to use a Settlement Administrator or to manage the Notice Program itself.

The Settlement Agreement provides for a 35-day period for providing notice of the settlement to the members of the Settlement Class and Sub-Classes in at least one of three ways: (i) mailed notice; (ii) publication notice; and (iii) long-form notice on a settlement web page. Mailed notice may be effected by either standard mail or email.  Notice shall be provided substantially in the forms attached as Exhibits __-___ to the Settlement Agreement.  The AOA (or a Settlement Administrator) also shall perform reasonable address traces for all mailed notices returned as undeliverable.  The AOA (or a Settlement Administrator) shall complete the

---

[1] The complete terms of the release are set forth in the Settlement Agreement.  Goldberg Cert., at ¶ 15.

re-mailing of mailed notice to those members of the Settlement Class and Sub-Classes whose new addresses were identified through address traces.

**F.      Objections**

In satisfaction of the requirements of Rule 23(b)(2), the settlement provides class members with a 60-day period following the completion of the 35-day notice mailing period to file written objections, if any, with the Court regarding the settlement.

## ARGUMENT

The proposed settlement confers significant benefits on the Settlement Class and Sub-Classes while providing the AOA with the certainty of the dismissal with prejudice of plaintiffs' claims in this action and a release of all claims against the AOA that could otherwise be asserted against the AOA by any member of any certified class, including claims for damages.  The injunctive relief provided in the settlement—including,  principally, the rescission of the Challenged Rule—are precisely the type of relief suitable for a Rule 23(b)(2) class action, and are the result of arm's-length negotiations by experienced counsel.  The settlement is fair, reasonable, and adequate, and the Settlement Agreement provides for notice to the Settlement Class and Sub-Classes as required under Rule 23.  Accordingly, the Court should certify the Settlement Class and Sub-Classes, preliminarily approve the settlement, appoint Plaintiffs' Counsel as Lead Class Counsel, and authorize the issuance of Notice to the Settlement Class and Sub-Classes.

**I.      The Proposed Settlement Class and Sub-Classes Should, For Settlement Purposes, Be Provisionally Certified Pursuant To Rule 23**

A court may grant preliminary certification for settlement purposes where, as here, the proposed settlement class arguably satisfies the four prerequisites of Rule 23(a), numerosity, commonality, typicality, and adequacy, as well as one of the three subsections of Rule 23(b).

*See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . [b]ut other specifications of the Rule . . . demand undiluted, even heightened, attention").  Where, as proposed here, the Court also certifies a sub-class or sub-classes, "each [are] treated as a class under this rule." F.R.C.P. 23(c)(5); *see* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.23 (2004) (hereafter "*Manual*") ("Each class or subclass must independently satisfy all the prerequisites of Rules 23(a) and (b)."

    Courts in this Circuit routinely provisionally approve proposed settlement classes before deciding a final motion for class certification and settlement.  *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, CIV.A. 04-5184 (GEB), 2007 WL 2589950, at *2 (D.N.J. Sept. 4, 2007), *aff'd*, 579 F.3d 241 (3d Cir. 2009) ("On April 13, 2007, this Court entered an Order Preliminarily Certifying a Class for Settlement Purposes and Preliminarily Approving Proposed Settlement"); *Henderson v. Volvo Cars of N.A., LLC*, CIV.A. 09-4146 CCC, 2013 WL 1192479, at *3 (D.N.J. Mar. 22, 2013) ("On June 22, 2012 the Court issued an order preliminarily approving the Settlement and preliminarily certifying the Settlement Class"); *see also In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 473 (D.N.J. 2012) ("Plaintiffs then moved for preliminary approval of the settlement, which this Court granted").

    The Supreme Court has held that a trial court must conduct a "rigorous analysis" to determine whether the requirements of Rule 23 are met.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).  But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*, 568 U.S.

455, 466 (2013); *see Williams v. Jani-King of Philadelphia Inc.*, 837 F.3d 314, 322 (3d Cir. 2016) ("the class certification stage is not the place for a decision on the merits").

As demonstrated below, under the "rigorous analysis" standard, the requirements of Rule 23 are satisfied here.

### A.     The Proposed Settlement Class and Sub-Classes are so Numerous That it is Impossible to Bring All Class Members Before This Court

For settlement purposes, the proposed Settlement Class and Sub-Classes satisfy Rule 23(a)(1)'s numerosity requirement.  No magic number is required to satisfy the numerosity requirement, and the Third Circuit has explained that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *see* 1 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 13.12 (5th ed. 2005) (hereinafter "*Newberg*") (explaining that while there is no "magic number" to satisfy numerosity, a class or sub-class of "40 or more" typically satisfies this requirement).  The standard is not impossibility: a class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *See, e.g.*, *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 309 (3d Cir. 1998); *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 405–06 (D.N.J. 1990).

Based on the AOA's information, there are approximately 48,000 members of the AOA, 32,000 AOA Board certified DOs, and thousands of "lifetime" certificate holders.  Thus, joinder of the members of the Settlement Class and Sub-Classes would be highly impractical, if not impossible.  Accordingly, this action satisfies the numerosity requirement of Rule 23(a)(1) for settlement purposes.

**B.    The Class Representatives and the Proposed Settlement Class and Sub-Classes Share Common Legal and Factual Questions**

To satisfy commonality, a plaintiff need only demonstrate "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "[A] finding of commonality does not require that all class members share identical claims." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004) (quotation marks omitted).  Further, while Rule 23(a)(2) speaks of questions of law or fact in the plural, the "commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class," and "[b]ecause the requirement may be satisfied by a single common issue, it is easily met." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see Stewart*, 275 F.3d at 227 (same); *Clarke v. Lane*, 267 F.R.D. 180, 196 (E.D. Pa. 2010) (same).

Plaintiffs have identified the following issues common to the proposed Settlement Class and Sub-Classes:

- Whether the DO Board Certification Market and the AMM are separate product markets;

- Whether, during the relevant period, the AOA had market power in the DO Board Certification Market;

- Whether, during the relevant period, the AOA exploited its market power in the DO Board Certification Market with the Challenged Rule that conditioned AOA Board certification on the purchase of annual membership in the AOA;

- Whether the Challenged Rule affected a substantial amount of interstate commerce and/or commerce in New Jersey;

- Whether the Challenged Rule caused anticompetitive effects nationally and/or in New Jersey;

- Whether there were any procompetitive justifications for the Challenged Rule;

- Whether the AOA misrepresented the "lifetime" nature of the AOA Board certifications originally granted as such; and

- Whether the AOA's conduct violated Section 1 of the Sherman Act, Section 3 of the New Jersey Antitrust Act, and the New Jersey Consumer Fraud Act.

Because even "one question of fact or law" is sufficient to satisfy commonality, it cannot be reasonably disputed that commonality has been satisfied here—any of the above factual or legal issues, standing alone, would establish the requisite commonality under Rule 23(a)(2).

### C. The Class Representatives' Claims Are, For Settlement Purposes Only, Sufficiently Typical of the Claims of the Members of the Proposed Settlement Classes

The typicality requirement of Rule 23(a)(3) "is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Warfarin*, 391 F.3d at 531 (internal citations omitted); *see Baby Neal*, 43 F.3d at 57 (explaining typicality ensures "the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented"). "A named Plaintiff's claims are typical where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Jones v. Com. Bancorp, Inc.*, 05-5600 RBK, 2007 WL 2085357, at *3 (D.N.J. July 16, 2007).

Here, plaintiffs' claims are, for settlement purposes, sufficiently typical of all members of the Settlement Class and Sub-Classes because they purchased AOA membership, have AOA Board certifications, and two of the Plaintiffs—Dr. Talone and Dr. Renza—have "lifetime" certification.  Thus, plaintiffs assert the same legal claims on behalf of themselves that, for settlement purposes, are sufficiently typical of the claims of all members of the Settlement Class and Sub-Classes.  These similarities satisfy Rule 23(a)(3)'s typicality requirement for settlement purposes.

**D.      Proposed Lead Class Counsel and Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Class and Sub-Classes**

To satisfy the fourth and final requirement of Rule 23(a), adequacy, the representative plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Baby Neal*, 43 F.3d at 55; *In re Prudential Ins.*, 148 F.3d at 312 (adequacy "serves to uncover conflicts of interest between named parties and the class they seek to represent.") (internal citations omitted).

The Class Representatives submit there are no conflicts between them and the proposed Settlement Class and Sub-Classes because, as noted above, plaintiffs' claims against the AOA are, for settlement purposes, identical to those of the Settlement Class and Sub-Classes. Plaintiffs and the members of the proposed Settlement Class and Sub-Classes share a common interest in seeking the agreed-upon injunctive relief in the settlement.  Lastly, plaintiffs' Counsel are experienced class action litigators familiar with the legal and factual issues involved in this action, and each is highly qualified.  *See* Goldberg Cert., at ¶¶ 3-7.  Thus, the adequacy requirement is satisfied under Rule 23(a)(4).

**E.      The Proposed Settlement Class and Sub-Classes Meet the Requirements of Rule 23(b)(2)**

The proposed Settlement Class and Sub-Classes also satisfy Rule 23(b)(2).  The Court may certify a class under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2). The Third Circuit often refers to the necessity that the defendant acted or refused to act in a generally

15

applicable manner as "cohesiveness." *See, e.g.*, *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 248 (3d Cir. 1975) ("[b]y its very nature, a (b)(2) class must be cohesive as to those claims tried in the class action"); *see also Pro v. Hertz Equip. Rental Corp.*, CIV A 06-CV-3830 DMC, 2008 WL 5218267, at *7 (D.N.J. Dec. 11, 2008), *amended*, CIV.A.06-3830 DMC, 2009 WL 1010622 (D.N.J. Feb. 3, 2009) ("Rule 23(b)(2) requires cohesion so that final injunctive or declaratory relief is appropriate with respect to the class as a whole").  And "plaintiffs need not have sought injunctive relief in the complaint so long as it is the form of relief achieved by a settlement." 2 *Newberg* § 4.31.

The Supreme Court recently addressed the standard for certifying a (b)(2) class: "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360-61.  The Third Circuit has similarly held that "[w]hat is important is that the relief sought by the named plaintiffs should benefit the entire class," and as such, "the (b)(2) class [] serves most frequently as the vehicle for civil rights actions and other institutional reform **cases** that receive class action treatment." *Baby Neal*, 43 F.3d at 58 *see Stewart*, 275 F.3d at 228 ("*Baby Neal* teaches that courts should look to whether the relief sought by the named plaintiffs [will] benefit the entire class") (internal quotations omitted).  For instance, a New Jersey District Court certified a Rule 23(b)(2) class where the settlement agreement provided injunctive relief for violations of the Equal Credit Opportunity Act, including contribution to an education fund and business reforms related to certain extensions of credit.  *See Smith v. DaimlerChrysler Services N.A., LLC*, CIV.A.00-CV-6003-DMC, 2005 WL 2739213, at *1 (D.N.J. Oct. 24, 2005).

16

It is inarguable that the Challenged Rule "can be enjoined or declared unlawful only as to all of the class members or as to none of them," and the rescission of the Challenged Rule—the principal term in the settlement—is of an "indivisible nature."  Indeed, each and every one of the settlement terms agreed to by the Class Representatives and the AOA satisfy Rule 23(b)(2)—they constitute injunctive relief that will apply, as applicable, with equal weight to the members of the Settlement Class and Sub-Classes.  That is precisely the type of cohesive relief contemplated by the Advisory Committee Comments to Fed. R. Civ. P. 23(b)(2).

## II.   Preliminary Approval Should be Granted Because the Settlement is Fair and Reasonable

Settlement spares litigants the uncertainty, delay, and expense of a trial, and reduces the burden on judicial resources. As a result, both the Third Circuit and the District of New Jersey have recognized that "the law encourages and favors settlement of civil actions in federal courts, particularly in complex class actions." *Beneli v. BCA Fin. Services, Inc.*, 324 F.R.D. 89, 101 (D.N.J. 2018); *In re Warfarin*, 391 F.3d at 535 ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *Henderson*, 2013 WL 1192479 at *7 (D.N.J. Mar. 22, 2013) ("settlement of litigation is especially favored by courts in the class action setting"); *see also*; *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (the court "encourage[s] settlement of complex litigation that otherwise could linger for years"). And as the *Manual* recognizes, "settlement should be explored early in the case." *Manual* § 13.12; *see* 6A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1522, at 225-26 (2d ed. 1990) (citing 1983 Advisory Committee Notes to Rule 16) (hereinafter "*Wright & Miller*").

"Review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing." *Jones*, 2007 WL 2085357, at *2 (internal citations

omitted); *see In re Aetna UCR Litigation*, 2013 WL 4697994, at *10 (D.N.J. Aug. 30, 2013)

(same); *see also Manual* § 21.63 (same). "Preliminary approval is not binding, and it is granted

unless a proposed settlement is obviously deficient." *Jones*, 2007 WL 2085357, at *2.

"Preliminary approval is appropriate where the proposed settlement is the result of the parties'

good faith negotiations, there are no obvious deficiencies and the settlement falls within the

range of reason." *In re Aetna UCR Litigation*, 2013 WL 4697994, at *10.  Courts "will presume

that a proposed class action settlement is fair when certain factors are present, particularly

evidence that the settlement is the product of arm[']s-length negotiation, untainted by

collusion." 4 *Newberg* § 13.45 (collecting cases).

    While consideration of the requirements for **final** approval is premature at this stage, "it

is important to consider the final approval factors during this stage so as to identify any

potential issues that could impede the offer's completion." *Singleton v. First Student

Management LLC*, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014).  In the Third Circuit, those

factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction
> of the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the
> trial; (7) the ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best possible
> recovery; and (9) the range of reasonableness of the settlement fund to a possible
> recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). As set forth in detail below, with the

exception of the second *Girsh* factor—which cannot be analyzed because class notice has not

yet been disseminated—an initial analysis of the *Girsh* factors supports granting preliminary

approval of the settlement.

A.    **The Settlement Achieves an Excellent Result for the Settlement Class and Sub-Classes, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation: *Girsh* Factors One, Four, Five, and Six**

The first *Girsh* factor considers the complexity, duration, and likely expense of litigation. "The fourth, fifth, and sixth *Girsh* factors consider the risks of establishing liability, damages, and maintaining the class action through the trial, and may appropriately be analyzed together for purposes of preliminary approval." *Singleton*, 2014 WL 3865853, at *6. Although, as courts in the Third Circuit have explained, in a (b)(2) class the fifth factor—the risk of establishing damages—is either neutral, or the risk of securing injunctive relief is viewed as comparable to the risk of establishing damages. *See Pastrana v. Lane*, CIV.A. 08-468, 2012 WL 602141, at *5 (E.D. Pa. Feb. 24, 2012) ("The fifth *Girsh* factor is also neutral because, as the parties contend, Plaintiffs do not seek damages on behalf of the class but instead only seek injunctive relief"); *Williams v. City of Philadelphia*, CIV.A. 08-1979, 2011 WL 3471261, at *3 (E.D. Pa. Aug. 8, 2011) ("This is a class action under Rule 23(b)(2) for injunctive relief only. The class does not seek damages. However, the risks inherent in seeking injunctive relief are always significant").

"An antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003) (internal quotations omitted). And "continuing litigation through trial [] require[s] additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial." *Warfarin*, 391 F.3d 516 at 536.

This litigation has been ongoing for almost two years. It involves complex factual and legal issues, and absent the proposed settlement, the litigation would be vigorously contested for at least several years. The AOA has asserted, and would continue to assert, objections to

19

class certification and various defenses on the merits.  The Court might not certify a class.  If it does, a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, including with regard to injury and damages, making the outcome of such trial uncertain for both parties.  *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013) ("In light of the model's inability to bridge the differences between supra-competitive prices in general and supra-competitive prices attributable to the deterrence of overbuilding, Rule 23(b)(3) cannot authorize treating subscribers within the Philadelphia cluster as members of a single class.").

The Court's opinion deciding the AOA's motion to dismiss [ECF No. 29] describes some of the risks involved in establishing liability and damages.  The Court recognized a number of issues that, while sufficiently pleaded, could potentially result in a finding of no AOA liability or reduce or not award damages. Those issues include, among others, whether: (1) there is an "association membership market;" and, if so, whether the AOA has market power in that purported market; (2) the AOA has foreclosed other associations from competing with it by virtue of the Challenged Rule; and (3) class members would have joined a different membership organization absent the Rule.  ECF No. 29 at 15-16.  The uncertainty as to the ultimate resolution of each of those issues, among numerous others, and the challenges inherent in any class certification motion are among the risks associated with proceeding to trial and leaving the outcome of this action in the hands of the jury.  While each side believes that it would ultimately prevail, they also both recognize the risks associated with such complex and hotly disputed litigation.

And even if the members of the Settlement Class and Sub-Classes were willing to assume all of the litigation risks, the passage of time would introduce still more risks in terms of

appeals and possible changes in the law that would likely make a future recovery less beneficial than a recovery today. *See Warfarin*, 391 F.3d 516 at 536. ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.,* 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Class than receiving the benefits of the proposed Settlement at this time").

Against this background, a settlement providing the substantial benefits afforded here represents an excellent result for the members of the proposed Settlement Class and Sub-Classes. The permanent revocation of the Challenged Rule, the reduction in dues, the suspension of certain maintenance fees, and the numerous other provisions of the settlement provide substantial relief years earlier than would be the case if this litigation were to continue through trial and appeal.

> **B.    The Settlement is the Result of Thorough Arm's-Length Negotiations Conducted by Highly Experienced Counsel: *Girsh* Factors Three, Seven, Eight, and Nine**

As an initial matter, "a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters, and there are few objectors." *Henderson*, 2013 WL 1192479, at *7; *see* 4 *Newberg* § 13.45 (explaining a settlement agreement is entitled to "an initial presumption of fairness" because it is the result of arm's-length negotiations among experienced counsel).  And counsel's judgment that the settlement is fair and reasonable is also entitled to considerable weight: "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between,

the negotiating parties, and that the settlement, *taken as a whole*, is fair, reasonable and adequate to all concerned." *E.E.O.C. v. Com. of Pa.*, 772 F. Supp. 217, 219-20 (M.D. Pa. 1991), *aff'd sub nom. Binker v. Com. of Pa.*, 977 F.2d 738 (3d Cir. 1992) (emphasis in original) (internal quotations omitted); *see also Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re Prudential Ins. Co. of Am. Sales Practices Litig*, 962 F. Supp. 450, 543 (D.N.J. 1997) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (court is "entitled to rely upon the judgment of experienced counsel for the parties")), *aff'd*, 148 F.3d 283 (3d. Cir. 1998).

Analysis of the relevant *Girsh* factors further supports the position of the parties that the settlement is fair, reasonable, and adequate. The third *Girsh* factor requires the Court to "consider the degree of case development that Class Counsel have accomplished prior to Settlement, including the type and amount of discovery already undertaken." *In re Merck & Co., Inc. Vytorin ERISA Litigation,* 2010 WL 547613, at *7 (D.N.J. Feb. 9, 2010) (internal citations omitted). "In short, under this factor the Court considers whether the amount of discovery completed in the case has permitted counsel to have an adequate appreciation of the merits of the case before negotiating." *Id.* (internal citations omitted).

Counsel for the plaintiffs were well informed about the facts and strength of the claims asserted, having: (i) conducted their independent investigation for more than 18 months before the settlement was reached; (ii) engaged an economic expert that conducted various analyses over a period of more than one year; (iii) reviewed the "core" documents necessary to make their settlement demand; (iv) having certain discovery at the time the terms of the settlement

were negotiated, including interrogatory responses detailing the AOA's possible defenses to plaintiffs' antitrust claims.

Moreover, the settlement represents the culmination of protracted, arm's-length negotiations, Goldberg Cert., at ¶ 14, where plaintiffs were represented by attorneys with considerable experience in both antitrust cases and complex class actions, *Id.* ¶¶ 3-5, and the AOA was similarly represented by counsel with extensive experience defending antitrust matters and complex litigation.  The settlement negotiations were contested, conducted in good faith, and presided over in their entirety by Judge Schneider.  *Id.* ¶¶ 13-14.[2]

Thus, when weighed against the time, expense, and potential risk of further litigation, as outlined above, the settlement is a reasonable compromise that gives the Settlement Class and Sub-Classes a certain and substantial recovery now.

## III.    This Court Should Appoint Plaintiffs' Counsel as Lead Class Counsel

Rule 23(c)(1)(B) states that an order certifying a class action "must appoint class counsel under Rule 23(g)." The court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge

---

[2] Because this is a Rule 23(b)(2) class, the seventh, eighth and ninth *Girsh* factors are inapplicable. *See, e.g.*, *Pastrana*, 2012 WL 602141, at *5 ("The seventh, eighth, and ninth *Girsh* factors are inapplicable here. This action was certified under Rule 23(b)(2) for injunctive relief. As such, these factors, which deal with monetary judgments, are not applicable."); *Williams*, 2011 WL 3471261, at *3 ("Since this is a Rule 23(b)(2) class action for injunctive relief, not all the *Girsh* factors apply. We need not consider the ability of the defendants to withstand a greater judgment, [or] the range of reasonableness of the settlement fund . . ."); *Inmates of the Northumberland County Prison v. Reish*, 08-CV-345, 2011 WL 1627951, at *3 (M.D. Pa. Apr. 29, 2011) ("The seventh, eighth, and ninth factors, as articulated in *Girsh,* deal with monetary judgments and settlement funds, and thus are inappropriately evaluated here.").

of the applicable law; and (iv) the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

The work done by plaintiffs' counsel provides a substantial basis for a finding that they satisfy each applicable criterion of Rule 23(g), and are well qualified to serve as Lead Class Counsel. *See*, Goldberg Cert., at ¶¶ 3-7.  Counsel for the plaintiffs have vigorously prosecuted the plaintiffs' claims, and will continue to do so through all phases of the litigation, including trial, as may be necessary.  In addition to negotiating the settlement and participating in drafting the Settlement Agreement and exhibits, plaintiffs' counsel's efforts to this point include an 18-month independent investigation into the facts and law related to plaintiffs' claims, extensive work with an economic expert to analyze market conditions and develop a damages model, preparing the original and Amended Complaint, opposing the AOA's motions to dismiss those pleadings, written discovery, and litigating a variety of discovery disputes related to interrogatories, requests for production of documents, and third-party subpoenas.   Accordingly, the Court should appoint plaintiffs' Counsel as Lead Class Counsel.

## IV.    The Court Should Approve the Form and Manner of Notice to the Members of the Settlement Class

The parties also seek this Court's approval of the parties' Notice and the Notice Program. The manner in which notice is disseminated, as well as its content, must satisfy Rule 23(c)(2) governing class certification notice, Rule 23(e)(1) governing settlement notice, and due process. *See Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90-91 (3d Cir. 1985); *Grunewald v. Kasperbauer*, 235 F.R.D. 599, 609 (E.D. Pa. 2006).  The parties' proposed Notice and Notice Program satisfy Rule 23(c), Rule 23(e), and due process.  As such, the proposed Notice and Notice Program should be approved.

## A.      The Proposed Methods for Providing Notice Meet the Requirements for Approval

The parties propose that the AOA, or, in the AOA's sole discretion, a Settlement

Administrator, will mail individual Notice to each member of the Settlement Class and Sub-

Classes.  Goldberg Cert., at ¶ 20.  The parties also propose that Notice be published on an

accessible webpage or website.  *Id.*  Those proposed methods of providing notice fully satisfy

Rule 23(c), Rule 23(e), and due process. *See, e.g.*, *Zimmer Paper Products, Inc.*, 758 F.2d at 90

(explaining "[f]irst-class mail and publication consistently have been considered sufficient to

satisfy the notice requirements" of Rule 23).

## B.      The Content of the Proposed Notice Meets the Requirements for Approval

Under Rule 23(c), providing notice to "(b)(1) or (b)(2) Classes" as to certification is

discretionary: "the court **may** direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A)

(emphasis added); *see Manual* § 21.311 ("Notice in Rule 23(b)(1) and (b)(2) actions is within the

district judge's discretion. . . . [the Rule] contemplates different and more flexible standards for

those cases than for Rule 23(b)(3) actions"); *see also Zimmer Paper Products, Inc.*, 758 F.2d at

90 ("A higher notice standard is established by Rule 23(c)(2). That rule, however, applies only to

notice of class certification in (b)(3) class actions, advising potential class members of their right

to exclude themselves from the class.").

Under Rule 23(e) notice of a settlement must be provided "in a reasonable manner." Fed.

R. Civ. P. 23(e)(1).  "Although the Rule provides broad discretion to district courts with respect

to the notice's form and content, it must satisfy the requirements of due process." *In re Baby*

*Products Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013).  Such notice should generally

include "sufficient information to enable class members to make informed decisions on whether

they should take steps to protect their rights, including objecting to the settlement or, when

relevant, opting out of the class." *Id.*  As the Supreme Court has recently explained "[t]he Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action." *Wal-Mart*, 564 U.S. at 361–62.

Finally, while the notice requirements for a (b)(2) class are not as controlled as those for a (b)(3) class, reference to Rule 23(c)'s requirements for a (b)(3) class and relevant treatises are instructive.  For instance, a notice must be written in "clear[] and concise[] plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B); *see* 3 *Newberg* § 8:17 ("[a]s important as the specific content is the guideline that the notice be written in simple, straightforward language."). Rule 23 also requires a 23(b)(3) class to describe, among other things, (i) the nature of the action; (ii) the definition of the class certified; and (iii) the claims, issues or defenses in the case. Fed. R. Civ. P. 23(c)(2)(B).  Finally, the *Manual* outlines requirements for a settlement notice to include, among others, (i) definitions of the class and sub-classes; (ii) describing options "open to the class members and the deadlines" to act; (iii) the "essential terms" of the proposed settlement; (iv) benefits provided to class representatives; (v) information regarding attorneys' fees; (vi) the "time and place of the hearing to consider approval of the settlement"; and (vii) "the method for objecting to (or, if permitted, for opting out of) the settlement."  *Manual* § 21.312.

The proposed Notice meets all the necessary requirements of Rule 23 and due process. The proposed mail and website notices are written in plain English and describe the nature of the claims in the case, the Settlement Class and Sub-Classes, and the Settlement Agreement and the relief to be provided.  The proposed Notice also clearly explains the process for a member of the Settlement Class or Sub-Classes to object to the settlement.  Accordingly, the contents of the Notice meet all requirements of Rule 23 and due process and fully apprises members of the Settlement Class and Sub-Classes of their options.

The proposed Notice Program will maximize the opportunity for members of the Settlement Class and Sub-Classes to understand the nature and terms of the settlement and to object or otherwise respond if they so choose. The costs of notice will be borne by the AOA. The parties have endeavored to secure the most efficient Notice Program possible, which can be done using the addresses in the AOA's database of AOA members.

The Settlement Agreement provides that, no later than 35 days after the entry of the Preliminary Approval Order, the Notice Program must be substantially completed, and the Notice Program provides an additional 60-day period for members of the Settlement Class and Sub-Classes to file objections, if any, to the settlement. Goldberg Cert., at ¶ 21. Such notice programs are commonly used in class actions like this one and constitute valid, due and sufficient notice to class members, and satisfy 23(e)(1)'s "notice in a reasonable manner" standard. Accordingly, the Court should approve the proposed form and manner of notice to the Settlement Class and Sub-Classes.

<u>**CONCLUSION**</u>

For the foregoing reasons, the parties respectfully ask this Court to: (i) certify the proposed Settlement Class and Sub-Classes for settlement purposes only, (ii) preliminarily approve the settlement; (iii) appoint plaintiffs' counsel as Lead Class Counsel; and (iv) approve the issuance of Notice to the Settlement Class and Sub-Classes.

<div style="margin-left:40%">

Respectfully submitted,

DUANE MORRIS LLP
A DELAWARE LIMITED LIABILITY
PARTNERSHIP

/s/ Seth A. Goldberg_____
Seth A. Goldberg, Esquire (NJ 1542004)
**DUANE MORRIS LLP**

</div>

Dated:  July 24, 2018

27

A DELAWARE LIMITED LIABILITY
PARTNERSHIP
Wayne A. Mack, Esquire (*pro hac vice*)
Seth A. Goldberg, Esquire (NJ 1542004)
30 South 17th Street
Philadelphia, PA 19103
215.979.1000 (Phone)
215.979.1020 (Fax)
SAGoldberg@duanemorris.com
WAMack@duanemorris.com

James Greenberg, Esquire (NJ 217131965)
1940 Route 70 East, Suite 200
Cherry Hill, NJ  08003
856.874.4208 (Phone)
856.424.4446 (Fax)
JGreenberg@duanemorris.com

*Attorneys for Plaintiffs*


**SAIBER LLC**


Dated:  July 24, 2018                   /s/ Jeffrey W. Lorell
Jeffrey W. Lorell (jlorell@saiber.com)
Jeffrey S. Soos (jsoos@saiber.com)
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
(973) 622-3333
(973) 622-3349 (Fax)


**SIDLEY AUSTIN LLP**


Dated:  July 24, 2018                   /s/ Jack R. Bierig
Jack R. Bierig (jbierig@sidley.com)
Steven J. Horowitz (shorowitz@sidley.com)
David Geiger (dgeiger@sidley.com)
Neil G. Nandi (nnandi@sidley.com)
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
(312) 853-7036 (Fax)

*Attorneys for Defendant*

# EXHIBIT B

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALBERT TALONE, D.O., CRAIG WAX, D.O., RICHARD RENZA, D.O., and ROY STOLLER, D.O., individually and on behalf of all others similarly situated,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>THE AMERICAN OSTEOPATHIC ASSOCIATION,<br><br>　　　Defendant. | Civil Action No.: 1:16-cv-04644-NLH-JS |

**CERTIFICATION OF SETH A. GOLDBERG, ESQ. IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

I, Seth A. Goldberg, depose and state as follows:

　　　1.　　　I am a partner at the law firm Duane Morris LLP, 30 S. 17th Street, Philadelphia PA, 19103.

　　　2.　　　I am a member in good standing of the bars of the Commonwealth of Pennsylvania, the State of New Jersey, the State of Florida, and the District of Columbia.  I was admitted to practice law in Pennsylvania in 2004, in New Jersey in 2004, in the District of Columbia in 2001, and in Florida in 1999.

　　　3.　　　Duane Morris is an AmLaw 100 law firm with more than 700 attorneys in offices across the United States and internationally. Duane Morris's attorneys, including the Duane Morris attorneys that represent Plaintiffs in this case, have represented both plaintiffs and defendants in various antitrust, securities, RICO, tax assessments, products liability, and health care class-action cases.

4.      I have extensive experience as a trial attorney, representing both plaintiffs and defendants.  My experience includes representing clients in class action cases in federal and state courts and in class arbitrations.  I also have extensive experience in complex commercial litigation matters, including numerous health care litigation matters.  For example, I am currently representing plaintiffs in Tennessee state court in a proposed class action asserting breach of contract claims against BlueCross BlueShield of Tennessee, Inc. and Volunteer State Health Plan, Inc., on behalf of all Tennessee emergency room physicians and health care professionals. *Emergency Medical Care Facilities, P.C. v. BlueCross BlueShield of Tennessee, Inc. and Volunteer State Health Plan, Inc.*, No. C-14-208.  I have also represented a statewide class of emergency room physicians in Illinois asserting class-action claims against health insurance companies arising out of improper reimbursement for non-contracted services provided to beneficiaries enrolled in the insurer's Medicaid plan, and was counsel to a national class of hospitals asserting class-action claims against two insurance companies arising out of improper reimbursement for facility charges, as opposed to professional charges.  I have published several articles related to class action litigation as well.  *See, e.g.*, *Class Arbitration Chaos*, 11 BNA CLASS ACTION LITIGATION REPORT 2, January 22, 2010; *Rehashing Issues in Class Action Arbitration*, 14 DISPUTE RESOLUTION MAGAZINE 1, Fall 2008.

5.      I also have extensive experience in antitrust litigation matters.  For example, I am currently representing a generic pharmaceutical manufacturer in multi-district litigation brought by various consumers and dozens of state attorneys general alleging violations of antitrust and consumer protection laws in connection with the pricing of generic drugs.  I obtained summary judgment on behalf of Virtua Health, Inc., a health system of four hospitals in southern New Jersey, against Deborah Heart and Lung Center, a specialty hospital in southern New Jersey, in

federal antitrust litigation in which the court held Deborah failed to show any adverse effect on competition in the market, and I represented a Philadelphia-area hospital in an action alleging antitrust claims against the region's largest health insurance company arising out of hospital reimbursement rates.

6.     Prior to bringing this lawsuit, beginning in approximately February of 2016, I and other attorneys at my firm began investigating the issues involved this case, including the scope of the Challenged Rule (as defined in the accompanying Motion), its' impact on both osteopathic physicians ("DOs") and medical association membership, and the various laws that were potentially applicable to the case, including state and federal law.

7.     In approximately June of 2016, Duane Morris engaged the Berkley Research Group, LLC ("BRG") to serve as economic experts to evaluate potential antitrust claims and antitrust damages, and to build a damages model suitable for an antitrust class action.  BRG is a leading global expert consulting firm that has served Fortune 500 companies and major law firms around the world.  And BRG has extensive antitrust litigation experience in areas including tying, price fixing, monopolization and predatory pricing.

8.     On August 1, 2016, after extensive factual investigation, legal research, and economic analysis, Plaintiffs in this case filed the initial Complaint.

9.     As set forth in great detail in Plaintiffs' Brief in Support of the Unopposed Motion for Certification of Settlement Class, Preliminary Approval of Settlement, and Approval of Class Notice (the "Brief" or the "Motion"), Plaintiffs conducted meaningful discovery prior to entering into the settlement, including the following:

- The exchange of Initial Disclosures;

- The exchange of Requests for Production of Documents and responses and objections thereto;

- The exchange of Interrogatories and responses and objections thereto; and

- Plaintiffs served approximately ten third parties subpoenas on various national and state professional physician associations.

10. In addition, on August 16, 2017, Judge Schneider conducted a Rule 16 Scheduling Conference, and on August 17, 2017, he issued an Order directing Plaintiffs to serve the American Osteopathic Association (the "AOA") with a request for "the 'core' information plaintiffs need to make a meaningful settlement demand regarding economic and non-economic issues." *See* ECF No. 42  The AOA produced such information in September and October 2017.

11. The parties also briefed for the Court various hotly contested discovery-related disputes, including the scope of discovery and whether class certification and merits discovery should be bifurcated.

12. On September 27, 2017, Judge Schneider conducted a teleconference with the parties and then issued an Order that (i) stayed all scheduling deadlines; (ii) required the AOA to produce certain additional internal documents that would help facilitate settlement; and (iii) scheduled *ex parte* telephone conferences with each party in advance of the first settlement conference between the parties on October 27, 2017.  *See* ECF No. 56.

13. On October 27, 2017, Judge Schneider mediated the first settlement conference among the parties.

14. Over approximately the next four months, the parties engaged in protracted, good faith, arm's-length negotiations, mediated by Judge Schneider.

15. The parties reached an agreement in principle on all settlement terms on February 16, 2018.  The complete terms of the settlement are set forth in the Settlement Agreement filed concurrently with this Certification.

16.     In exchange for the relief provided to the Settlement Class and Sub-Classes (as defined in the Brief), the settlement provides for the dismissal with prejudice of the claims asserted in this action, and provides that all members of the Settlement Class and Sub-Classes will fully release the AOA from all federal and state law claims that could have been asserted in this action, including claims for damages, that could have been asserted in this action, including but not limited to claims that result from, relate to, or arise out of (i) the Challenged Rule, and (ii) any alleged or actual misstatements or omissions concerning the "lifetime" nature of the AOA Board certifications originally characterized as "lifetime" certification.

17.     After the settlement was reached, and again mediated by Judge Schneider, the parties negotiated counsel fees, incentive awards, and the expenses of the settlement, and an agreement in principle on those terms was reached on March 9, 2018.

18.     I believe the foregoing investigation, legal research, expert analysis, and discovery have provided Plaintiffs with a firm basis for evaluating the risks in the case at bar and for evaluating the settlement.

19.     I further believe the settlement is a fair, adequate, and reasonable resolution of the claims at issue in this case.

20.     The proposed notices of settlement, to be mailed and/or posted on a settlement webpage by the AOA, or, in the AOA's sole discretion, a Settlement Administrator, in accordance with the procedures outlined in the Settlement Agreement (the "Notice Program") and attached to the Settlement Agreement as Exhibits 1-3, are appropriate forms of notice that satisfy the requirements of Fed. R. Civ. P. 23 and due process.

21.     The Settlement Agreement provides that, no later than 35 days after the entry of the Preliminary Approval Order, the Notice Program must be substantially complete, and the

Notice Program provides an additional 60-day period for members of the Settlement Class and Sub-Classes to file objections, if any, to the settlement.

22.     Should the settlement be preliminarily approved and the Settlement Class and Sub-Classes certified, the parties intend to file motions in support of final approval of the settlement prior to the final fairness hearing.

I declare under penalty of perjury under the laws of the State of New Jersey that the foregoing is true and correct.


                                        DUANE MORRIS LLP
                                        A DELAWARE LIMITED LIABILITY
                                        PARTNERSHIP

Dated:  July 24, 2018                    _/s/ Seth A. Goldberg_____
                                        Seth A. Goldberg, Esquire (NJ 1542004)

# EXHIBIT C

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ALBERT TALONE, D.O., CRAIG WAX,
D.O., RICHARD RENZA, D.O., and ROY       Civil Action No.: 1:16-cv-04644-NLH-JS
STOLLER, D.O., individually and on behalf of
all others similarly situated,

       Plaintiffs,

       v.

THE AMERICAN OSTEOPATHIC
ASSOCIATION,

       Defendant.

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into as of June __, 2018, by and

among the Settlement Class and Sub-Classes (as defined below) acting by and through Plaintiffs

Albert Talone, D.O., Craig Wax. D.O., Richard Renza, D.O., and Roy Stoller, D.O. ("Plaintiffs"

or "Class Representatives") and Duane Morris LLP, counsel for the Class Representatives

("Plaintiff's Counsel" or "Class Counsel") and the Defendant American Osteopathic Association

("AOA").

## I.    BACKGROUND

**WHEREAS**, Plaintiffs are prosecuting the above-captioned action, *Albert Talone, D.O.,*

*Craig Wax, D.O., Richard Renza, D.O. and Roy Stoller, D.O., Individually and on behalf of all*

*others similarly situated v. The American Osteopathic Associatio*n, Case No: 1:16-CV-04644

(NLH)(JS) (the "Action") against the AOA in the United States District Court for the District of

New Jersey, on their own behalf and on behalf of all similarly situated Doctors of Osteopathic Medicine ("DOs").

**WHEREAS**, Plaintiffs claim that they were injured as a result of the AOA's allegedly unlawful practice of conditioning the obtaining and maintenance of AOA Board certification on membership in the AOA ("the Rule") in violation of 15 U.S.C. § 1 and N.J. Stat. Ann. § 56:9-3, and that they were injured by allegedly fraudulent statements or intentional omissions made by the AOA that constituted misrepresentations of the "lifetime" nature of the AOA Board certifications originally granted as "lifetime" Board certificates, in violation of N.J. Stat. An. § 56:8-1 *et seq*, as set forth in the Plaintiffs' Amended Class Action Complaint (Case No. 1:16-CV-04644 (NLH)(JS), Doc. No. 16);

**WHEREAS**, the AOA denies Plaintiffs' allegations, has asserted defenses to Plaintiffs' claims in the Action, and asserts that all conduct challenged in this case is lawful;

**WHEREAS**, arms-length negotiations have taken place between Class Counsel and counsel for the AOA, and this Agreement has been reached as a result of those negotiations;

**WHEREAS**, Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding the Action, have been fully advised by their counsel as to the terms and effects of this Agreement, and have been informed by their counsel of the duties and obligations of a Class Representative, and, while Plaintiffs believe the Action has merit, Plaintiffs recognize the expense and length of the continued proceedings that would be necessary to prosecute the Action through trial and appeals, and have concluded that resolving the claims asserted in the Action against the AOA according to the terms set forth below is in the best interest of the Plaintiffs and the Settlement Class and Sub-Classes;

2

**WHEREAS**, the AOA, notwithstanding its assertion that it is not liable for the claims asserted and its belief that the challenged conduct is entirely lawful, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against the AOA with respect to the allegations in this Action;

**WHEREAS**, the parties desire to compromise and settle any and all issues and claims relating to the allegations made in this Action and any and all claims and issues that could have been made in connection with the facts and allegations in this Action, by or on behalf of all persons included in the Settlement Class and Sub-Classes; and

**WHEREAS**, the parties have concluded that a settlement of the claims based upon the terms contained in this Agreement is fair, reasonable and adequate, and in the best interests of the members of the Settlement Class and Sub-Classes, as well as the AOA, and that it is reasonable to pursue a settlement of the claims based upon the procedures outlined herein;

**NOW, THEREFORE**, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Releasees (defined below) subject to the approval of the Court, on the following terms and conditions:

**II.     DEFINITIONS**

1.      "AOA Board-Certified Sub-Class" means all members of the Settlement Class that have applied for or held AOA Board certification since August 1, 2012.  The AOA Board-Certified Sub-Class is a settlement sub-class within the terms of this Settlement Agreement.

2.      "Board Certified" or "Board Certification" means a designation conferred on physicians who meet the requirements in a specified field of medical practice under the jurisdiction of a certifying Board or Conjoint Board of the AOA, including a Primary or Subspecialty Certification, as defined by the AOA's website at: http://www.osteopathic.org/inside-aoa/development/aoa-Board-certification/Pages/certification-definitions.aspx.

3.      "Board of Trustees" means the administrative and executive body of the AOA, as described in Article VIII, Section 1 of the AOA's Constitution and Article VII, Section 1 of the AOA's Bylaws.

4.      "Class Counsel" means the law firm Duane Morris LLP, and includes the law firm of Duane Morris in its capacity as counsel for, as defined below, the Class Representatives, and the Settlement Class and Sub-Classes (and their members).

5.      "Class Representatives" mean Albert Talone, D.O., Craig Wax. D.O., Richard Renza, D.O., and Roy Stoller, D.O.

6.      "Complaint" means the Amended Complaint filed in this Action.

7.      "Court" means the United States District Court for the District of New Jersey.

8.      "Decouple" or "Decoupling" refers to the AOA's change in its Mandatory Membership Policy, as described in the AOA Bureau of Osteopathic Specialists' resolution that was approved by the AOA Board of Trustees on March 2, 2017.

9.      "DO" refers to a physician who holds a Doctor of Osteopathic Medicine or Doctor of Osteopathy degree from an accredited college of osteopathic medicine in the United States.

4

10.    "Effective Date" means the second business day after all of the following events
have occurred:

a.    Class Counsel and the AOA's counsel have executed this Agreement;

b.    The Court has entered the parties' agreed-upon proposed Final Approval
Order; and

c.    The time for seeking rehearing or appellate or other review of the Final
Approval Order has expired, and no appeal or petition for rehearing or review has been timely
filed; or the Agreement is affirmed on appeal or review without material change, no other appeal
or petition for rehearing or review is pending, and the time period during which further petition
for hearing, review, appeal, or certiorari could be taken has finally expired.  Notwithstanding the
foregoing, the Effective Date shall not be earlier than thirty (30)  days after entry of the Final
Approval Order.

11.    "Final Approval Order" means an Order of dismissal and final judgment entered
by the Court in this Action dismissing the claims asserted in the Action with prejudice, granting
final approval of the terms and conditions of the settlement as set forth in this Agreement, and
entering judgment according to the terms set forth in this Agreement.

12.    "House of Delegates" or "HOD" means the legislative body of the AOA, as
described in Article VI of the AOA's Constitution and Article V of the AOA's Bylaws.

13.    "Lifetime Board Certification" or "Non-Expiring Board Certification" means an
iteration of the AOA's Board Certification designation that was conferred by AOA in the past
prior to the commencement of requirements for certification and continuous certification.  *See,
e.g.*, American Osteopathic Association, *Introduction to the AOA Osteopathic Continuous
Certification Process*, OSTEOPATHIC.ORG, http://www.osteopathic.org/inside-

5

aoa/development/aoa-Board-certification/Documents/OCC-brochure.pdf (last visited March 28, 2018).

14.     "Lifetime Sub-Class" means all members of the Settlement Class who received Board Certification from the AOA during the time that the AOA offered "lifetime" or "non-expiring" certifications. The Lifetime Sub-Class is a settlement sub-class within the terms of this Settlement Agreement.

15.     "Mandatory Membership Policy" or "the Rule" means the AOA's policy of conditioning the maintenance of AOA Board certification on membership in the AOA, and of not conferring, deactivating, or suspending a DO's Board Certification if the DO is not a member of AOA.

16.     "Membership Dues" means the annual fee that a DO is required to pay to the AOA for membership in the AOA during a specific, twelve-month membership period, as further described on the AOA's website at: http://www.osteopathic.org/inside-aoa/about/aoa-membership/Pages/dues-quick-sheet.aspx.

17.     "Notice Deadline" means thirty-five (35) days after the entry of the Preliminary Approval Order.

18.     "Notice Program" means the process which the AOA (either directly or, at its discretion, through a Settlement Administrator designated by it) will follow to inform the Settlement Class Members about the Action, the Agreement, and their rights with respect to both, as described more fully in Section VIII of the Agreement.

19.     "Osteopathic Continuous Certification" or "OCC" means the AOA Board certification program described on the AOA's website at: http://www.osteopathic.org/inside-aoa/development/aoa-Board-certification/Pages/osteopathic-continuous-certification.aspx.

6

20.    "Parties" means the Class Representatives, on behalf of themselves and the Settlement Class Members and Settlement Sub-Class Members, and the AOA.

21.    "Preliminary Approval Order" means the Order of Preliminary Approval of Settlement in the form attached as Exhibit 4.

22.    "Annual Regular Membership" means the level of membership in the AOA for "DOs in practice for four years or more," as the term "Annual Regular Membership" is defined on the AOA website at: http://www.osteopathic.org/inside-aoa/about/aoa-membership/Pages/dues-quick-sheet.aspx.

23.    "Releasees" or "Released Parties" means the AOA and each of its present and former, direct and indirect, subsidiaries, divisions, affiliates and other related organizations, predecessors, successors, and assigns, and the present and former directors, trustees, officers, employees, agents, insurers, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, predecessors, successors, and assigns of each of them.

24.    "Releasors," means the Class Representatives and the Settlement Class and Subclass Members, and their respective heirs, assigns, beneficiaries, successors, guardians, officers, directors, trustees, stockholders, agents, employees, legal or other representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates and other related organizations, executors, administrators, purchasers, predecessors, and successors.

25.    "Released Claims" means the claims that result from, relate to, or arise out of the conduct, omissions, duties, or matters that were or could have been alleged in the Action, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies based upon, relating to, or arising out of (1) the Mandatory Membership Policy and the alleged "tie" of AOA membership to Board certification; and (2) any alleged or

7

actual misstatements or omissions concerning the "lifetime" nature of the AOA Board certifications originally granted as "lifetime" Board certificates.

26.     "Settlement Class" means all persons who were members of AOA (regardless of membership category) and all persons or entities who paid dues on behalf of anyone who was a member of AOA at any time since August 1, 2012.

27.     "Settlement Class and Sub-Classes" means the Settlement Class, the AOA Board Certified Sub-Class, and the Lifetime Sub-Class.

28.     "Settlement Class Members" means all members of the Settlement Class and Sub-Classes.

## III.     NON-ADMISSION OF LIABILITY

29.     The parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

30.     Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (1) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (2) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency or other tribunal.

8

## IV.     NON-DISPARAGEMENT AND CONFIDENTIALITY

31.     Class Counsel and the Class Representatives agree to refrain from disparaging the AOA and/or the Released Parties, publicly or in the media regarding any issue related to the Action.  Class Counsel and the Class Representatives agree to refrain from taking any action designed to harm the public perception of the AOA and/or the Released Parties, except they may provide sworn testimony required by compulsory process.

32.     The AOA and/or the Released Parties and its counsel agree to refrain from disparaging Class Counsel, the Class Representatives, or the Settlement Class Members, publicly or in the media, regarding any issue related to the Action.  The AOA and/or the Released Parties and its counsel agree to refrain from taking any action designed to harm the public perception of Class Counsel, the Class Representatives, or the Settlement Class Members.

33.     None of the parties will hold a press conference, communicate to the media, or otherwise comment on, this Settlement Agreement or the Action until the entry of the Preliminary Approval Order, except as necessary to effectuate the terms and conditions of this Settlement Agreement.  Other than as set forth herein, the parties agree not to disclose publicly or to any other person the terms of this Agreement until this Agreement has been fully executed. Nothing in this paragraph shall prevent AOA from discussing the settlement with the AOA Board, the House of Delegates, AOA committees, and any osteopathic society, as AOA deems necessary or appropriate to effectuate or evaluate the terms of this Settlement Agreement.

## V.     NON-RETALIATION

34.     The AOA will not engage in or tolerate unlawful retaliation of any kind against the Class Representatives or the Settlement Class Members for their participation in this lawsuit. Prohibited Retaliation includes any form of discriminatory or harassing treatment that is directed toward a Class Representative or Settlement Class Member because he or she has assisted,

joined, or participated in any manner in this litigation.  Prohibited Retaliation shall include, but

not be limited to, adverse actions such as termination of membership in the AOA, or removal

from any of the AOA's bureaus, councils, committees, or departments, removal from the AOA's

House of Delegates, or revocation of Board certification.

35.     Allegations of prohibited retaliation will be investigated by the Bureau of

Membership's Subcommittee on Ethics of the AOA.

## VI.     SETTLEMENT CLASS AND SUB-CLASSES

36.     For settlement purposes only, Plaintiffs shall seek, and the AOA shall not oppose,

certification of the following Settlement Class under Rule 23(a) and (b)(2) of the Federal Rules

of Civil Procedure:

> All persons who were members of AOA (regardless of membership category) and all persons or entities who paid dues on behalf of anyone who was a member of AOA at any time since August 1, 2012.

37.     For settlement purposes only, Plaintiffs shall seek, and the AOA shall not oppose,

certification of the following Settlement Sub-Classes under Rule 23(a) and (b)(2) of the Federal

Rules of Civil Procedure:

a.     An "AOA Board-Certified Sub-Class" consisting of all members of the

Settlement Class that have held AOA Board certifications since August 1, 2012.

b.     A "Lifetime Sub-Class" consisting of all members of the Settlement Class

who were given "lifetime" Board certification.

38.     For settlement purposes only, Plaintiffs shall also seek, and the AOA shall not

oppose, appointment of Duane Morris LLP as Class Counsel, and appointment of Plaintiffs as

Class Representatives, to represent the Settlement Class and Sub-Classes.

10

## VII.   PRELIMINARY APPROVAL

39.     No later than July 27, 2018, the parties shall jointly present this Agreement to the Court by way of motion or otherwise, seeking certification of the Settlement Class and Sub-Classes and preliminary approval of this Agreement (the "Submission for Preliminary Approval").  The AOA, through its counsel, shall join in the Submission for Preliminary Approval.  The parties will take all appropriate steps and use their best efforts to obtain Final Court Approval of the Agreement and to procure dismissal of the Action, on the terms set forth herein.

40.     The parties will jointly apply to the Court for the entry of an Order Preliminarily Approving Settlement ("Preliminary Approval Order") in substantially the form attached hereto as Exhibit 4 that shall, among other things:

a.      Preliminarily certify Plaintiffs Albert Talone, D.O., Craig Wax. D.O., Richard Renza, D.O., and Roy Stoller, D.O as Class Representatives, and preliminarily appoint Duane Morris LLP as Class Counsel;

b.      Schedule, a preliminary hearing (the "Preliminary Fairness Hearing") at the Court's Discretion where the Court will preliminarily: (1) determine whether the Action should be certified for settlement purposes only as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2); (2) determine whether the terms and conditions of the Agreement are substantively and procedurally fair, reasonable and adequate, and in the best interests of the Class; (3) determine whether final judgment should be entered dismissing the Action with prejudice, releasing the Released Claims, and barring and enjoining prosecution of any and all Released Claims; (4) consider the application of Class Counsel for an award of attorneys' fees and expenses, in an amount not to exceed that provided for herein; (5) consider the application for an incentive award for the Class Representatives to be paid out of any award of fees and expenses

11

paid to Class Counsel, in an amount not to exceed that provided for herein; (6) hear and determine any objections to the Settlement and the application of Class Counsel for an award of attorneys' fees and expenses; and (7) order such other relief as the Court may deem necessary and appropriate;

        c.      Approve the proposed Class Notice in a form substantially similar to that set forth in Exhibits 1-3, and notice methodology as set forth in this Agreement;

        d.      Direct the AOA to disseminate Class Notice as set forth in Section VIII of this Agreement;

        e.      Determine that the Class Notice (1) is the best practicable notice; (2) is reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and their right to object to the proposed settlement; (3) is reasonable and constitutes, adequate and sufficient notice to all persons entitled to receive notice; and (4) meets due process and all other applicable legal requirements, including the requirements of Rule 23 of the Federal Rules of Civil Procedure;

        f.      Require that each Settlement Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed settlement, and/or to the award of attorneys' fees and expenses and/or to the incentive award must serve on Class Counsel and AOA's counsel and file with the Court, no later than ninety five  (95) days after entry of the Preliminary Approval Order,  a statement of the objections, as well as the specific reasons, if any, for each objection, including any legal support that the Settlement Class Member wishes to bring to the Court's attention and any evidence that the Class Member wishes to introduce in support of his or her objection, or be forever barred from separately objecting; and

12

       g.     Direct that pending Final Court Approval of the Settlement, Plaintiffs and all members of the Class, and any of them, are barred and enjoined from commencing, prosecuting, instigating or in any way participating in the commencement, prosecution or instigation of any action in any court or tribunal asserting any Released Claims against any of the Released Parties.

## VIII.   NOTICE TO THE CLASS

41.     Upon Preliminary Approval of the Settlement, the AOA (or a Settlement Administrator, to the extent deemed appropriate by AOA in its sole discretion) shall implement the Notice Program provided herein, using the forms of notice approved by the Court in the Preliminary Approval Order. The initial notice shall be sent within fifteen (15) days after entry of the Preliminary Approval Order. Such notice shall include, among other information: a description of the material terms of the Agreement; an explicit statement that Settlement Class Members may not exclude themselves from or "opt out" of the Settlement Class or Sub-Classes; a date by which Settlement Class Members may object to the Agreement; the date the Final Fairness Hearing is scheduled to occur (if known); and the address of the settlement website where Settlement Class Members may access this Agreement and other related documents and information. Counsel for the AOA shall insert the correct dates and deadlines in the notice before the Notice Program commences, based upon any specific dates and deadlines set by the Court in the Preliminary Approval Order. Notices and publications provided under or as part of the Notice Program shall not bear or include the AOA logo or trademarks, or otherwise be styled to appear to originate from the AOA.

42.     The notice shall explicitly notify class members that, upon issuance of the Final Approval Order, Class Members shall have no right to seek any further relief based on, or related to, the allegations of the Complaint, including but not limited to damages relief.

43.     The Notice shall include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees and service awards. The procedure for objecting is described more fully in Section IX of the Agreement.

44.     Notice shall be provided to the Settlement Class and Sub-Classes in at least one of three ways:  Mailed Notice, Publication Notice, and Long-Form Notice on a Settlement Web page.  Mailed Notice may be effected by either standard mail or email.  Notice shall be provided substantially in the forms attached as Exhibits 1-3 to this Agreement.

45.     The AOA (or a Settlement Administrator, to the extent deemed appropriate by AOA in its sole discretion) shall perform reasonable address traces for all Initial Mailed Notices that are returned as undeliverable.  The AOA (or a Settlement Administrator) shall complete the re-mailing of Mailed Notice to those Settlement Class Members whose new addresses were identified as of that time through address traces (the "Notice Re-mailing Process").

46.     The Mailed Notice Program (which is composed of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than 35 days after entry of the Preliminary Approval Order.  Within two weeks after completion of the Notice Re-mailing Process, the AOA (or a Settlement Administrator, to the extent deemed appropriate by AOA in its sole discretion) shall provide an affidavit that confirms that the Mailed Notice Program was completed in a timely manner.  Counsel for the AOA shall file that affidavit with the Court in conjunction with Plaintiffs' motion for final approval of the Settlement.

47.     The Initial Mailed Notice shall be completed by the Notice Deadline.

48.     Any Long-Form Notice given by AOA on the Settlement Website shall remain operational until at least the Notice Deadline.

14

49.     Within the parameters set forth in this Section, further specific details of the Notice Program shall be subject to the agreement of Class Counsel and AOA.

## IX.     OBJECTION PROCEDURE

50.     In order for a Settlement Class Member to object to the Settlement and/or to Class Counsel's application for attorneys' fees and service awards, his or her objection must be electronically filed with the Court, or mailed to the Clerk of the Court, with a copy to Class Counsel and AOA's counsel.  The objection must set forth in writing the specific reason(s), if any, for each objection, including any legal support the objector wishes to bring to the Court's attention and any evidence the objector wishes to introduce in support of the objection, and must be electronically filed by the objection deadline or postmarked by no later than the objection deadline, as specified in the notice.

51.     For an objection to be considered by the Court, the objection must also set forth:

a.     That it relates to the Action;

b.     The objector's full name, address, email address, and telephone number;

c.     An explanation of the basis upon which the objector claims to be a Settlement Class Member;

d.     All grounds for the objection, accompanied by any legal support for the objection;

e.     The identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Agreement, the application for attorneys' fees, or the application for service awards;

f.     The identity of all counsel representing the objector who will appear at the Fairness Hearing;

g.     A list of any persons who will be called to testify at the Fairness Hearing in support of the objection;

h.     A statement confirming whether the objector intends to personally appear and/or testify at the Fairness Hearing; and

i.     The objector's signature (an attorney's signature is not sufficient).

## X.     FINAL APPROVAL

52.     After the Fairness Hearing, and upon the Court's approval of this Agreement, the parties shall seek from the Court a Final Approval Order, which among other things must, as a condition of settlement:

a.     Find that the Court has personal jurisdiction over all Settlement Class Members and that the Court has subject matter jurisdiction over (1) the claims asserted in the Action and (2) all of the terms of this Agreement, including the Release, and all exhibits hereto;

b.     Find that the Class Notice and the notice methodology implemented under this Agreement (1) constituted the best practicable notice; (2) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, their right to object to the proposed settlement and to appear at the Fairness Hearing; (3) was reasonable and constituted adequate and sufficient notice to all persons entitled to receive notice; and (4) met all requirements of due process, the Federal Rules of Civil Procedure and all other applicable law;

c.     Certify the class and sub-classes for settlement purposes;

d.     Approve this Agreement and the proposed settlement as fair, reasonable and adequate, and consistent and in compliance with the applicable provisions of the United States Constitution, as to, and in the best interests of, each of the Parties and the Settlement Class Members; direct the Parties to implement and consummate this Agreement according to its terms

16

and provisions; and declare this Agreement to be binding on, and have res judicata and

preclusive effect in all pending and future lawsuits in federal or state court or in any other legal,

administrative or regulatory proceedings that are commenced or maintained by or on behalf of

the Settlement Class Members or other Releasors;

   e. Find that Class Counsel and the Class Representatives in the Action

adequately represented the Settlement Class and Sub-Classes for purposes of entering into and

implementing the settlement and thereby appointing Duane Morris LLP as Class Counsel and

Plaintiffs Albert Talone, D.O., Craig Wax. D.O., Richard Renza, D.O., and Roy Stoller, D.O. as

Class Representatives.

   f. Dismiss the Action with prejudice, without fees or costs to any party

except as provided in this Agreement;

   g. Incorporate and set forth in full the Release set forth herein, make the

Release effective as of the date of the Final Approval Order, and forever discharge the Released

Parties in accordance with the terms of the Release;

   h. Permanently bar and enjoin (1) all Settlement Class Members from filing,

commencing, prosecuting, intervening in, participating (as class members or otherwise) in, or

receiving any benefits or other relief from any lawsuit (including putative class action lawsuits),

or administrative, regulatory or other proceeding in any jurisdiction that is based on or arises out

of the claims or allegations raised in the Action or the conduct released in the Action; and (2) all

Persons from organizing Settlement Class Members into, or encouraging Settlement Class

Members to form, a separate class for purposes of pursuing as a purported class action any

lawsuit (including by seeking to amend a pending complaint to include class allegations, or

seeking class certification in a pending action) that is based on or arises out of the claims or allegations raised in the Action, or the conduct released in the Action;

   i. Authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of this Agreement and all exhibits to it that are consistent with the Final Approval Order;

   j. Without affecting the finality of the Final Approval Order for purposes of appeal, the Court shall retain jurisdiction as to all matters relating to enforcement and interpretation of this Agreement and the Final Approval Order, and for any other necessary purposes; provided, however, that nothing in this paragraph shall restrict the ability of the Parties to exercise their rights under this Agreement; and

   k. Award attorneys' fees and expenses to Class Counsel and service awards to the Class Representatives in an amount not to exceed the amount provided for herein.

## XI. SETTLEMENT RELIEF

53. In consideration for the dismissal of the Action under the terms of this Agreement, the parties have agreed to the following terms:

   a. <u>Rescission of the Challenged Rule</u>: No later than the Effective Date, the AOA shall permanently decouple AOA Board certification from membership in the AOA, such that, as of the Effective Date, AOA Board certification shall no longer be conditioned upon membership in the AOA;

   b. <u>Termination of Board Certification Maintenance Fee</u>: The AOA shall, for the period from June 1, 2019 through May 31, 2022, terminate the Certification Maintenance Fee (currently $90) that the AOA currently charges AOA Board-certified DOs -- with AOA having the right to reinstate a Certification Maintenance Fee at any time after May 31, 2022, if so determined by the AOA House of Delegates;

18

c.      <u>Dues Reduction</u>: the AOA Board of Trustees ("BOT") shall recommend to the HOD that the HOD approve (1) a $90 reduction in the annual membership dues for Annual Regular Membership, which is currently $683 for the period from June 1, 2019 through May 31, 2020; and (2) a resolution that the Annual Regular Membership dues will not be increased over that reduced amount for the period from June 1, 2020 through May 31, 2022, provided that, assuming that the HOD accepts this recommendation, the level of Annual Regular Membership dues beginning June 1, 2022 shall be determined by the HOD, in accordance with the AOA's Constitution and Bylaws;

d.      <u>Lifetime Certification Holders</u>: AOA will not require Board-certified DOs who received "lifetime" Board certification to participate in Osteopathic Continuous Certification ("OCC") or to remain members of AOA.  However, lifetime certification will continue to require a license to practice in good standing for the state or other jurisdiction in which the physician practices, specialty specific Continuing Medical Education identified by the certifying Board, and no evidence of unethical or unlawful conduct by the Board-certified DO;

e.      <u>Continuing Medical Education ("CME")</u>: The AOA shall, for the period from January 1, 2019 through December 31, 2021, make available to all AOA members who purchase Annual Regular Membership two courses from the online CME programming on a complimentary basis, subject to an aggregate maximum of 12 CME credits each calendar year;

f.      <u>CME Acceptance for AOA Membership</u>: The AOA shall recognize accredited CME whether taken in person or online, for purposes of maintaining membership in the AOA.  AOA shall not adopt membership requirements based on the number of CME credits that may be taken online versus the number of CME credits that must be taken in person.

19

However, AOA and AOA specialty Boards can adopt requirements for the number and nature of CME credits that must be obtained to maintain AOA Board certification;

g.      No Enforcement of CME Requirements for Non-Board Certified DO Members: The AOA may maintain CME requirements as aspirational goals for members. However, physicians will not lose membership in AOA as a result of failing to meet the CME requirement, provided that the physicians meet the CME requirements for the state(s) in which they practice;

h.      Osteopathic Awareness Campaign Expenditures: The AOA shall, for the June 1, 2019-2020 and June 1, 2020-2021 Fiscal Years, provide funding of not less than $2 million per fiscal year for the D.O. Osteopathic Physician Brand Awareness Campaign, which refers to the campaign to take "osteopathic medicine to a wide audience," described in detail on the AOA's website at: http://www.osteopathic.org/inside-aoa/about/Pages/doctors-that-DO-campaign.aspx;

i.      Establishment of Independent/Private Practice DO Task Force: The AOA shall establish a task force comprised of between five and seven members consisting of independent private practice DOs or DOs who practice in an independent private practice DO group, all of whom are engaged in direct patient care.  The membership of this task force will be determined at the sole discretion of the AOA Board of Trustees as long as the members meet the above qualifications.  The task force will be treated like any other task force of the AOA.  This task force shall be established for a minimum of three years.

j.      Costs of Notice.  The AOA shall bear the costs relating to notice to the Settlement Class and Sub-Classes.

20

## XII.   RELEASE

54.     As of the Effective Date, the Releasors shall automatically be deemed to have fully and irrevocably released and forever discharged the Released Parties of and from any and all liabilities, rights, claims, actions, causes of action, demands, injuries, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, without limitation, for sole liability, contribution, indemnity, or otherwise, that are based upon, relate to, or arise out of the Released Claims.

55.     The Releasors also hereby expressly waive and release, with respect to the Released Claims, upon this Agreement becoming final, any and all provisions, rights, and benefits, as to the Released Claims conferred by §1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to §1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 54 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Parties have agreed to release pursuant to Paragraph 54, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

21

56.     In addition to any other defenses the AOA may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

## XIII.   ATTORNEYS' FEES, COSTS, AND EXPENSES

57.     Class Counsel may seek an award of attorneys' fees and expenses from the Court in an amount not to exceed $2,617,000 which shall be paid by the AOA to Class Counsel as set forth below.  Class Counsel will not seek an award of attorneys' fees and expenses in excess of $2,617,000, and the AOA will not oppose an application to the Court for an award of attorneys' fees and expenses to Class Counsel in an amount not to exceed $2,617,000, which shall be the sole aggregate compensation for all attorneys  for the Settlement Class and Sub-Classes in this Action.  The attorneys' fees and expenses to be paid by the AOA to Class Counsel are in addition to and separate from the benefits to the Settlement Class and Sub-Classes provided by this Agreement and do not reduce or diminish the benefits of this settlement to the Settlement Class and Sub-Classes.

58.     Class Counsel's application for an award of attorneys' fees and expenses pursuant to this subsection shall be made no later than ten business days before the Fairness Hearing.  Such application will be heard at the time of the Fairness Hearing or as soon thereafter as may be determined by the Court.  The Court's award of attorneys' fees and expenses to Class Counsel shall be payable by the AOA within ten (10) business days after the Effective Date (the "Due Date"), provided that AOA has received all information required to wire the amount payable to Class Counsel.  Attorneys' fees and expenses shall be paid by the AOA to Duane Morris LLP pursuant to wire instructions provided in writing and signed by designated by Class

22

Counsel, and delivered to the AOA and its counsel no later than 20 business days before the Due Date, which wire instructions shall include the name of the financial institution and the name and telephone number of a contact person at the financial institution, the financial institution routing number and the name and account number of the account to which the funds are to be transferred.  In addition, Class Counsel shall provide defense counsel with an executed Form W-9 no later than the time that it provides the written wire transfer instructions.

59.     Class Counsel intends to apply for an incentive award for the Class Representatives not to exceed $15,000 each, which shall be paid by Class Counsel to the Class Representatives from the proceeds of the award of attorneys' fees and expenses to Class Counsel.  Class Counsel will pay the incentive award to the Class Representatives within 21 calendar days after receipt of payment of attorneys' fees and expenses from the AOA.

60.     The parties' negotiation of, and agreement to, the foregoing attorneys' fees, expenses, and incentive awards did not occur until after the substantive terms of this Agreement had been otherwise negotiated and fully agreed upon.

61.     The AOA shall have no obligation to pay for an award of attorneys' fees and expenses other than as set forth herein, and shall not be obligated to pay any award of attorneys' fees or expenses to any counsel other than Class Counsel.  If and to the extent that counsel other than Class Counsel identified in this Agreement apply for an award of attorneys' fees and expenses, the AOA reserves the right to oppose all such applications on any grounds.  Class Counsel hereby warrant and represent that, as of the date of this Agreement, they are unaware of any other counsel who intend to apply for an award of attorneys' fees and expenses.

23

62.     If this Agreement is terminated pursuant to any of its provisions or for any other

reason, the AOA's obligations under this Section, including the obligation to pay any amount of

attorneys' fees, expenses or incentive awards, shall likewise be terminated.

63.     Payment by the AOA of any attorneys' fees and expenses pursuant to this

Agreement, as approved by the Court, will completely satisfy any and all obligations on its part

or on the part of the other Released Parties to pay attorneys' fees, costs, expenses, and incentive

awards in connection with the Action and the matters raised therein.  The Released Parties shall

have no responsibility or liability whatsoever regarding the payment of attorneys' fees, costs,

expenses, or incentive awards other than as set forth in this Section.

## XIV.   MODIFICATION OR TERMINATION OF SETTLEMENT

64.     The terms and provisions of this Agreement may not be amended, modified or

except by written agreement signed by the Parties and approved of the Court;

65.     This Agreement shall terminate at the sole option and discretion of the AOA or

the Class Representatives if (1) the Court, or any appellate court(s), rejects, modifies or denies

approval of any portion of this Agreement or the proposed settlement that the terminating party

in its (or their) sole judgment and discretion determine(s) is material, including, without

limitation, the terms of relief, the findings or conclusions of the Court, the provisions relating to

notice, the definition of the Class and/or the terms of the Release; (2) the Court, or any appellate

court(s), does not enter or completely affirm, or alters, limits, or expands, any portion of the

Final Approval Order, or any of the Court's findings of fact or conclusions of law, that the

terminating party in its (or their) sole judgment and discretion believe(s) is material; or (3) the

HOD does not approve any of the settlement terms in Section XI that require an affirmative vote

of the HOD to become effective, including the Dues Reduction, outlined in Paragraph 53(c).

The terminating party must exercise the option to withdraw from and terminate this Agreement,

24

as provided in this paragraph, in writing no later than 14 days after receiving actual notice of the event prompting the termination.

66.     The AOA may elect to terminate this Agreement and settlement if the total amount of attorneys' fees, costs, expenses, and incentive awards awarded by the trial court or any appellate court to Class Counsel and/or any other counsel and representative plaintiffs exceeds $2,617,000. If the AOA elects to terminate this Agreement and settlement pursuant to this provision of the Settlement Agreement, it must deliver a notice of termination to Class Counsel within 14 days after receiving actual notice of the event prompting the termination.

67.     If this Agreement is terminated pursuant to the preceding paragraphs 64, 65, or 66 in this Section, then:

a.     This Agreement shall be null and void and shall have no force or effect, and no Party to this Agreement or its counsel shall be bound by any of its terms;

b.     All of its provisions, and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of AOA, the Class Representatives or any Class Member, or the Parties' counsel, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement and shall proceed with the Litigation;

c.     Releasors expressly and affirmatively reserve all claims, causes of action, arguments and motions that have been or might later be asserted in the Action, including, without limitation, all allegations set forth in the Complaint and that this Action may proceed as a certified class action;

d.     The Released Parties expressly and affirmatively reserve all arguments, motions and defenses that have been or might later be asserted in the Action, including, without

25

limitation, all defenses and allegations set forth in the AOA's Answer, including that this Action may not proceed as a class action;

e.    Neither this Agreement, nor its terms, nor the fact of its having been made, nor the negotiations leading to it, nor any action taken by a Party or Settlement Class Member under this Agreement shall be admissible or entered into evidence or used for any other purpose whatsoever in the Action or in any other action or judicial, administrative, regulatory or other proceeding; and

f.    Any order or judgment entered after the date of this Agreement shall be deemed vacated and without any force or effect.

## XV.    MISCELLANEOUS PROVISIONS

### A.    Confidential Information

68.    The parties acknowledge that during the course of the Action, they have received Confidential Information (as defined in the Confidentiality Order).  The parties, their counsel, their experts and consultants and others retained by them, as well as the agents of each of them, agree not to disclose or use in any way any Confidential Information that may have been or may be received in connection with the Action or the settlement of the Action.  The Settlement Class Members, Class Representatives, and Class Counsel, their experts and consultants and others retained by them, as well as the agents of each of them, agree not to use any Confidential Information as a basis for any future litigation, or to provide the information to others as a basis for any future litigation, against the AOA, its subsidiaries or affiliates, or any of their predecessors, successors, assignors, assignees, directors, officers, employees, attorneys, agents, or representatives.

26

69.     Within 60 days after the Effective Date, the parties shall either destroy or return to each other all copies of confidential documents provided during discovery in the Action, except that the parties will not be required:

a.     To search for and/or eliminate emails present on their respective email systems or system back-ups that may constitute, contain or reflect Confidential Information (although the parties may not disclose Confidential Information in such emails except as permitted in the Confidentiality Order or this Agreement or unless disclosure is required by law) or work product; or

b.     To return or destroy any other work product.

70.     The provisions of the Confidentiality Order shall remain in effect.

**B.     Entire Agreement**

71.     This Agreement shall constitute the entire agreement between the AOA and the Class Representatives, on behalf of themselves and the Settlement Class and Sub-Classes, and supersedes and replaces any prior agreements and understandings, whether oral or written, between and among them, with respect to such matters.  This agreement may not be modified or amended except in writing, executed by Plaintiffs and the AOA and approved by the Court.

**C.     Binding Agreement**

72.     This Agreement shall benefit and bind the parties, as well as their representatives, heirs and successors, and shall be construed as a whole, according to its plain meaning.

**D.     Jurisdiction and Governing Law**

73.     The Court retains jurisdiction over the interpretation, implementation, enforcement, and performance of this Agreement and any disputes arising thereunder.  Any action, motion or other application to enforce this Agreement and any terms contained herein, shall be commenced and maintained only in this Court.  The validity, construction,

27

interpretation, performance, and enforcement of this Agreement and all terms contained herein shall be governed by and interpreted according to the law of the United States Court of Appeals for the Third Circuit to the extent that federal law applies, and the law of New Jersey to the extent state law applies, without giving effect to New Jersey choice of law principles.

**E.   No Assignment**

74.   The parties each represent and warrant that they have not assigned, transferred or purported to assign or transfer, in whole or in part, any interest in any of the rights and claims that are the subject of this Agreement.

**F.   Counterparts**

75.   This Agreement may be executed in one or more counterparts, and a facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Agreement. All executed counterparts, and each of them, shall be deemed to be one and the same original instrument.  This Agreement shall be deemed executed as of the date of the last signature executed below.  The parties shall exchange among themselves original, signed counterparts, and a complete set of such counterparts shall be filed with the Court as an exhibit to the Submission for Preliminary Approval.

**G.   Advice of Counsel**

76.   Each of the parties has had the benefit of the advice of counsel in the negotiation, drafting and execution of this Agreement, and the language in all parts of this Agreement is the product of the efforts of such counsel.

**H.   Authority**

77.   The parties each represent and warrant that they have authority to enter into this Agreement subject to certification of the Settlement Class and Sub-Classes and approval of this Agreement by the Court.

**I.      CAFA Notice**

78.      The AOA shall serve notice of this settlement, via overnight courier and in a form

that meets the requirements of 28 U.S.C. § 1715, on the appropriate federal and state officials no

later than 10 days after this Agreement has been filed with the Court.

**J.      Neither Party is Drafter**

79.      Neither of the parties to this Agreement shall be considered to be the primary

drafter of this Agreement, or of any of its provisions, for the purpose of any rule of interpretation

or construction that might cause any provision to be construed against the drafter.

**K.      Notification**

80.      Except as otherwise described in the Class Notices attached as Exhibits 1-3 to this

Agreement, all notices and other communications referenced in this Agreement shall be in

writing and shall be served by overnight mail or by registered or certified mail, return receipt

requested and email, addressed to the parties' counsel at their respective addresses as set forth

below:

> Notices to Class Representatives or the Settlement Class Members
>
> James Greenberg, Esq.
> Duane Morris LLP
> 1940 Rte. 70 East, Suite 100,
> Cherry Hill, NJ 08003
> JGreenberg@duanemorris.com
>
> Or
>
> Seth A. Goldberg, Esq.
> Duane Morris LLP
> 30 S. 17th Street
> Philadelphia, PA 19103
> SAGoldberg@duanemorris.com

29

Notices to AOA

Jack R. Bierig, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603
jbierig@sidley.com

AND

Jeffrey W. Lorell, Esq.
Saiber LLC
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932-2266
jlorell@saiber.com

AND

Joshua L. Prober, Esq.
American Osteopathic Association
142 E. Ontario St.
Chicago, IL 60611-2864
jprober@osteopathic.org

**L.     Time for Compliance**

81.     If the date for performance of any act required by or under this Agreement to be performed on a particular day or within a specified period of time falls on a Saturday, Sunday or legal or Court holiday, such act may be performed on the next business day.

**M.     Best Efforts of Parties**

82.     The parties agree to undertake their respective best efforts to effectuate the settlement described in this Agreement.  They shall encourage the Court to approve the Agreement, and shall not encourage anyone included within the Settlement Class or Sub-Classes to object to the Court's approval of the Agreement.  They further represent, agree and acknowledge that the settlement is a fair resolution of these claims for the parties and the Settlement Class Members.  Neither the parties nor their respective counsel shall make any

statements suggesting the contrary, either before or after the Court's approval of the settlement and this Agreement.

[Intentionally Left Blank – Signatures on Next Page]

**AMERICAN OSTEOPATHIC ASSOCIATION**

Name: Joshua L. Prober
Title: Senior Vice Present & General Counsel
142 E. Ontario St.
Chicago, IL 60611-2864
Date:        6 - 29 - 2018


**SAIBER LLC**

Jeffrey W. Lorell, Esquire
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
Date: _____


**SIDLEY AUSTIN LLP**

Jack R. Bierig, Esquire
One South Dearborn
Chicago, Illinois 60603
Date: _____ 7/2/18


33

**AMERICAN OSTEOPATHIC ASSOCIATION**

Name: Joshua L. Prober
Title: Senior Vice Present & General Counsel
142 E. Ontario St.
Chicago, IL 60611-2864
Date:

**SAIBER LLC**

Jeffrey W. Lorell, Esquire
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
Date:  6/29/18

**SIDLEY AUSTIN LLP**

Jack R. Bierig, Esquire
One South Dearborn
Chicago, Illinois 60603
Date:

33

IN WITNESS WHEREOF, the undersigned, or their counsel on their behalf, have executed this Agreement on the dates indicated below.

**Albert A. Talone, D.O**

_____

911 Sunset Road,
Burlington, NJ 08016
Date: _____

**Craig M. Wax, D.O.**

_____

155 N. Main Street,
Mullica Hill, NJ 08062
Date: _____

**Richard Renza, D.O.**

_____

6410 New Jersey Ave.,
Wildwood Crest, NJ 08260
Date: _____

**Roy Stoller, D.O.**

_____

222 Sykes Lane,
Wallingford, PA 19086
Date: _____

**DUANE MORRIS LLP**

_____

Seth A. Goldberg, Esquire
30 S. 17th Street
Philadelphia, PA 19103
Date: _____ 6/28/18

32

IN WITNESS WHEREOF, the undersigned, or their counsel on their behalf, have executed this Agreement on the dates indicated below.

Albert A. Talone, D.O

911 Sunset Road,
Burlington, NJ 08016
Date: _____

**Craig M. Wax, D.O.**

_____

155 N. Main Street,
Mullica Hill, NJ 08062
Date: _____

**Richard Renza, D.O.**

_____

6410 New Jersey Ave.,
Wildwood Crest, NJ 08260
Date: _____

**Roy Stoller, D.O.**

_____

222 Sykes Lane,
Wallingford, PA 19086
Date: _____

**DUANE MORRIS LLP**

_____

Seth A. Goldberg, Esquire
30 S. 17th Street
Philadelphia, PA 19103
Date: _____

32

ment on the dates indicated below

Albert A. Talone, D.O.

911 Sunset Road
Burlington, NJ 08016.
Date: _____

Craig M. Wax, D.O.

155 N. Main Street,
Mullica Hill, NJ 08062
Date: _____ 06/28/18

Richard Renza, D.O.

6410 New Jersey Ave.,
Wildwood Crest, NJ 08260
Date: ____ 6/28/18

Roy Stoller, D.O.

222 Sykes Lane,
Wallingford, PA 19086
Date: _____

DUANE MORRIS LLP

Seth A. Goldberg, Esquire
30 S. 17th Street
Philadelphia, PA 19103
Date: _____

IN WITNESS WHEREOF, the undersigned, or their counsel on their behalf, have executed this Agreement on the dates indicated below.

**Albert A. Talone, D.O**

_____

911 Sunset Road,
Burlington, NJ 08016
Date: _____

**Craig M. Wax, D.O.**

_____

155 N. Main Street,
Mullica Hill, NJ 08062
Date: _____

**Richard Renza, D.O.**

_____

6410 New Jersey Ave.,
Wildwood Crest, NJ 08260
Date: _____

**Roy Stoller, D.O.**

_____

222 Sykes Lane,
Wallingford, PA 19086
Date: _____6/20/2018_____

**DUANE MORRIS LLP**

_____

Seth A. Goldberg, Esquire
30 S. 17th Street
Philadelphia, PA 19103
Date: _____

**EXHIBIT 1**

Page 1

<u>Important Notice About the Settlement of Class Action Litigation Against the American
Osteopathic Association ("AOA")</u>

**If You Were a Member of AOA or paid AOA dues on behalf of an AOA Member at Any
Time Since August 1, 2012, You May Be Eligible for Benefits from a Class Action
Settlement.**

**Page 2**

A Settlement has been reached in a class action lawsuit challenging the AOA's policy that holders of an AOA Board certification must also purchase membership in the AOA in order to maintain their Board certification, and alleging that "lifetime" members of the AOA were injured by allegedly fraudulent statements or intentional omissions made by the AOA that allegedly constituted misrepresentations of the "lifetime" nature of the AOA Board certifications originally granted as "lifetime" certificates.  The AOA denies any liability or wrongdoing, and the Court has not decided which side is right.  However, to avoid the costs and risks of litigation, the AOA has agreed to a settlement.

## Who is Included?  The Settlement Class consists of all persons who were AOA members and all persons or entities who paid dues on behalf of any AOA member at any time since August 1, 2012. There are also sub-classes comprised of (1) all members of the Settlement Class that have held AOA Board certifications since August 1, 2012; and (2) all members of the Settlement Class who were given "lifetime" Board certification.

## What Are the Settlement Terms?  The AOA has agreed to the following settlement terms:

- Rescission of the Challenged Rule: The AOA shall permanently decouple AOA Board certification from membership in the AOA, such that, as of the Effective Date of the Settlement, AOA Board certification shall no longer be conditioned upon membership in the AOA;
- Termination of Board Certification Maintenance Fee: The AOA shall, for the period from June 1, 2019 through May 31, 2022, terminate the Certification Maintenance Fee (currently $90 per certification) that the AOA currently charges AOA Board-certified DOs.  The Certification Maintenance Fee may be reinstated at any time after May 31, 2022, if approved by the AOA House of Delegates ("HOD");
- Dues Reduction: The AOA shall reduce the Annual Regular Membership dues (currently $683) by $90 for the 12-month period beginning June 1, 2019 through May 31, 2020.  It shall not increase the Annual Regular Membership dues above that reduced amount for the period from June 1, 2020 through May 31, 2022.  Any changes to the amount of Annual Regular Membership dues after May 31, 2022, shall be determined by the HOD, in accordance with the AOA's Constitution and Bylaws;
- Lifetime Certification Holders: AOA will not require Board-certified DOs who received "lifetime" Board certification to participate in Osteopathic Continuous Certification ("OCC") or to remain members of AOA.  However, lifetime certification will continue to require a license to practice in good standing for the state or other jurisdiction in which the physician practices, specialty specific Continuing Medical Education identified by the certifying board, and no evidence of unethical or unlawful conduct by the Board-certified DO;
- Continuing Medical Education ("CME"): The AOA shall, for the period from January 1, 2019 through December 31, 2021, make available to all AOA members who purchase Annual Regular Membership two courses from its online CME programming on a complimentary basis, subject to an aggregate maximum of 12 CME credits each calendar year;
- CME Acceptance for AOA Membership: The AOA shall recognize accredited CME whether taken in person or online, for purposes of maintaining membership in the AOA and will not impose membership requirements as to the number of CME credits that may be taken online versus the number of CME credits that must be taken in person.  However, AOA specialty boards can identify requirements for the number of online or in person CME credits that must be taken to maintain AOA Board certification;
- No Enforcement of CME Requirements for Non-Board Certified DO Members: The AOA may maintain CME requirements as aspirational goals for members.  However, physicians will not lose membership in AOA as a result of failing to meet the CME requirement, provided that the physicians meet the CME requirements for the state(s) in which they practice;
- Osteopathic Awareness Campaign Expenditures: For each of the Fiscal Years June 1, 2019-2020 and June 1, 2020-2021, the AOA shall provide funding of not less than $2 million for the D.O. Osteopathic Physician Brand Identity Campaign, which refers to the campaign to promote "osteopathic medicine to a wide audience,"

**For more information: [url]**

**Page 3**

described in detail on the AOA's website at: http://www.osteopathic.org/inside-aoa/about/Pages/doctors-that-DO-campaign.aspx;

- <u>Establishment of Independent/Private Practice DO Task Force</u>: The AOA shall establish a task force comprised of between five and seven members who are independent private practice DOs or DOs who practice in an independent private practice DO group, all of whom are engaged in direct patient care. The membership of this task force will be determined at the sole discretion of the AOA Board of Trustees as long as the members meet the above qualifications. The task force will be treated like any other task force. The task force shall be established for a minimum of three years;
- <u>Costs of Notice</u>. The AOA shall bear the costs relating to notice to the Settlement Class and Sub-Classes.
- <u>Attorneys' Fees and Class Representative Service Awards</u>. The AOA has also agreed to pay a court-ordered award of attorneys' fees and costs, up to a total amount of $2,617,000, and that Class Counsel will request that service payments of up to $15,000 be paid to the four Class Representatives for their service on behalf of the whole Settlement Class.

## How Do I Get These Benefits? A Settlement Class Member will receive these benefits from the Settlement automatically.

## Your Rights Will Be Affected. YOU CANNOT EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS OR ANY SUB-CLASS. ONCE THE SETTLEMENT AGREEMENT BECOMES FINAL, YOU WILL BE BOUND BY THE TERMS OF THE SETTLEMENT AGREEMENT, INCLUDING ITS RELEASES OF ANY CLAIM THAT WAS OR COULD HAVE BEEN INCLUDED IN THIS LITIGATION. YOU WILL BE BARRED FROM MAKING ANY CLAIM OF ANY KIND, INCLUDING A CLAIM FOR MONETARY DAMAGES.

## Your Right To Object. You may object to the Settlement by [date]. The Court has scheduled a hearing on [date] to consider whether to approve the Settlement. You can appear at the hearing, but you do not have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing. You can visit the following website to learn more about how to object to the Settlement: [url].

**For more information: [url]**

**EXHIBIT 2**

**Legal Notice**

**If You Were a Member of the American Osteopathic Association ("AOA") or paid AOA dues on behalf of an AOA Member at Any Time Since August 1, 2012, You May Be Eligible for Benefits from a Class Action Settlement**

### What Is This Notice?

A Settlement has been reached in a class action lawsuit challenging the AOA's policy that holders of an AOA Board certification must also purchase membership in the AOA in order to maintain their Board certification, and alleging "lifetime" members were injured by allegedly fraudulent statements or intentional omissions made by the AOA that constituted misrepresentations of the "lifetime" nature of the AOA Board certifications originally granted as "lifetime" certificates. The AOA denies any liability or wrongdoing, and the Court has not decided which side is right. However, to avoid the costs and risks of litigation, the AOA has agreed to a settlement.

### Who Is Included?

The Settlement Class includes all persons who were members of AOA (regardless of membership category) and all persons or entities who paid dues on behalf of any AOA member at any time since August 1, 2012. There are also sub-classes comprised of (1) all members of the Settlement Class that have held AOA Board certifications since August 1, 2012; and (2) all members of the Settlement Class who were given "lifetime" Board certification.

### What Are The Settlement Terms?

If the Settlement is approved and becomes final, it will provide a number of valuable benefits to Settlement Class Members. The AOA has agreed to the following settlement terms:

- Rescission of the Challenged Rule: The AOA shall permanently decouple AOA Board certification from membership in the AOA, such that, as of the Effective Date of the Settlement, AOA Board certification shall no longer be conditioned upon membership in the AOA;

- Termination of Board Certification Maintenance Fee: The AOA shall, for the period from June 1, 2019 through May 31, 2022, terminate the Certification Maintenance Fee (currently $90 per certification) that the AOA currently charges AOA Board-certified DOs. The Certification Maintenance Fee may

be reinstated at any time after May 31, 2022, if so approved by the AOA House of Delegates ("HOD");

- Dues Reduction: The AOA shall reduce the Annual Regular Membership dues (currently $683) by $90 for the 12-month period beginning June 1, 2019 through May 31, 2020. It shall not increase the Annual Regular Membership dues above that reduced amount for the period from June 1, 2020 through May 31, 2022. Any changes to the amount of Annual Regular Membership dues after May 31, 2022, shall be determined by the HOD, in accordance with the AOA's Constitution and Bylaws;

- Lifetime Certification Holders: AOA will not require Board-certified DOs who received "lifetime" Board certification to participate in Osteopathic Continuous Certification ("OCC") or to remain members of AOA. However, lifetime certification will continue to require a license to practice in good standing for the state or other jurisdiction in which the physician practices, specialty specific Continuing Medical Education identified by the certifying board, and no evidence of unethical or unlawful conduct by the Board-certified DO;

- Continuing Medical Education ("CME"): The AOA shall, for the period from January 1, 2019 through December 31, 2021, make available to all AOA members who purchase Annual Regular Membership two courses from its online CME programming on a complimentary basis, subject to an aggregate maximum of 12 CME credits each calendar year;

- CME Acceptance for AOA Membership: The AOA shall recognize accredited CME whether taken in person or online, for purposes of maintaining membership in the AOA and will not impose membership requirements as to the number of CME credits that may be taken online versus the number of CME credits that must be taken in person. However, AOA specialty boards can identify

requirements for the number of online or in person CME credits that must be taken to maintain AOA Board certification;

- <u>No Enforcement of CME Requirements for Non-Board Certified DO Members</u>: The AOA may maintain CME requirements as aspirational goals for members. However, physicians will not lose membership in AOA as a result of failing to meet the CME requirement, provided that the physicians meet the CME requirements for the state(s) in which they practice;

- <u>Osteopathic Awareness Campaign Expenditures</u>: For each of the Fiscal Years June 1, 2019-2020 and June 1, 2020-2021, the AOA shall provide funding of not less than $2 million for the D.O. Osteopathic Physician Brand Identity Campaign, which refers to the campaign to promote "osteopathic medicine to a wide audience" described in detail on the AOA's website at: http://www.osteopathic.org/inside-aoa/about/Pages/doctors-that-DO-campaign.aspx;

- <u>Establishment of Independent/Private Practice DO Task Force</u>: The AOA shall establish a task force comprised of between five and seven members who are independent private practice DOs or DOs who practice in an independent private practice DO group, all of whom are engaged in direct patient care. The membership of this task force will be determined at the sole discretion of the AOA Board of Trustees as long as the members meet the above qualifications. The task force will be treated like any other task force. The task force shall be established for a minimum of three years;

- <u>Costs of Notice</u>. The AOA shall bear the costs relating to notice to the Settlement Class and Sub-Classes.

- <u>Attorneys' Fees and Class Representative Service Payments</u>. The AOA has also agreed to pay a court-ordered award of attorneys' fees and costs, up to a total amount of $2,617,000, and that Class Counsel will request that service payments

of up to $15,000 be paid to the four Class Representatives for their service on behalf of the whole Settlement Class.

**How Do I Get Settlement Benefits?**

Settlement Class Members will receive any benefits from the Settlement for which they are eligible automatically.

**Your Rights WILL Be Affected.**

ONCE THE SETTLEMENT BECOMES FINAL, YOU WILL BE BOUND BY THE TERMS OF THE SETTLEMENT, INCLUDING ITS RELEASES OF ANY CLAIM THAT WAS OR COULD HAVE BEEN INCLUDED IN THIS LITIGATION. YOU WILL BE BARRED FROM MAKING ANY CLAIM OF ANY KIND, INCLUDING A CLAIM FOR MONETARY DAMAGES. YOU MAY NOT EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS OR ANY SUB-CLASS.

**Your Right to Object.**

You may object to the Settlement by [date]. Visit the following website, [url], to learn more about how to object to the Settlement.

**When Will The Hearing Be Held To Determine Approval Of The Settlement, And Where?**

The Court will hold the final fairness hearing on [date] at [time] at the U.S. District Court for District of New Jersey, located at Mitchell H. Cohen Building & U.S. Courthouse, 4th & Cooper Streets, Camden, NJ, to decide whether to approve the Settlement and Class Counsel's request for attorneys' fees, litigation costs, and service payments to the Class Representatives. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check the Settlement website for updates.

**Who Are The Lawyers For The Class?**

The Court has appointed Duane Morris LLP as Class Counsel.

**For more information: [url]**

**EXHIBIT 3**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

# If You Were a Member of American Osteopathic Association ("AOA") or Paid AOA Dues on Behalf of any AOA Member at Any Time Since August 1, 2012, You May Be Eligible for Benefits from a Class Action Settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit challenging the AOA's policy that holders of an AOA Board certification must also purchase membership in the AOA in order to maintain their Board certification, and alleging "lifetime" members were injured by allegedly fraudulent statements or intentional omissions made by the AOA that constituted misrepresentations of the "lifetime" nature of the AOA Board certifications originally granted as "lifetime" certificates. The AOA denies any liability or wrongdoing, and the Court has not decided which side is right. However, to avoid the costs and risks of litigation, AOA has agreed to a settlement.

- If you were an AOA member or paid dues on behalf of any AOA member at any time since August 1, 2012, you are a member of the Settlement Class, and you may be eligible for benefits from the Settlement Agreement.

- Your legal rights **are** affected whether you act or do not act. Please read this notice carefully.

| Summary Of Your Legal Rights And Options In This Settlement | |
|---|---|
| **GET SETTLEMENT BENEFITS AUTOMATICALLY** | If you were an AOA member or paid dues on behalf of an AOA member at any time since August 1, 2012, you do not have to do anything to receive the benefits of the Settlement Agreement. You will receive your benefits automatically if the Court approves the Settlement and it becomes final. |
| **OBJECT BY [DATE]** | Write to the Court if you do not like the Settlement. You may object to the Settlement and still receive settlement benefits if the Settlement is approved by the Court. |
| **GO TO A HEARING ON [DATE]** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | If you were an AOA member or paid dues on behalf of an AOA member at any time since August 1, 2012, you will receive any settlement benefits to which you are entitled if you take no action, and you will give up your right to participate in further litigation against AOA about the issues in this case, including the right to seek any monetary damages against AOA. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court still has to decide whether to approve the Settlement. If it does, and any appeals are resolved in favor of the settlement, benefits will be distributed to those who qualify. Please be patient.

## What This Notice Contains

### Table of Contents

Page

BASIC INFORMATION ........................................................................................................................3
    1.    Why is there a notice? .........................................................................................................3
    2.    What is this litigation about? ...............................................................................................3
    3.    Why is this a class action? ...................................................................................................3
    4.    Why is there a Settlement? ..................................................................................................3

WHO IS PART OF THE SETTLEMENT ..........................................................................................4
    5.    Who is included in the Settlement? ......................................................................................4
    6.    What if I have questions about the Settlement? ...................................................................4
    7.    What if I do not like the Settlement? ...................................................................................4

THE SETTLEMENT BENEFITS ........................................................................................................4
    8.    What does the Settlement provide? ......................................................................................4
    9.    When will I receive my benefits? .........................................................................................6
    10.    How can I receive these benefits? .......................................................................................6

THE LAWYERS REPRESENTING YOU...........................................................................................6
    11.    Do I have a lawyer in the case? ...........................................................................................6
    12.    How will the lawyers and class representatives be paid?.....................................................6

OBJECTING TO THE SETTLEMENT ...............................................................................................6
    13.    How do I tell the Court if I do not like the Settlement?.......................................................6

THE FINAL APPROVAL HEARING ..................................................................................................7
    14.    When and where will the Court decide whether to approve the Settlement? ......................7
    15.    Do I have to attend the hearing?..........................................................................................8
    16.    May I speak at the hearing? .................................................................................................8

GETTING MORE INFORMATION.....................................................................................................8
    17.    How do I get more information? ..........................................................................................8

## BASIC INFORMATION

**1.   Why is there a notice?**

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement.  This notice explains the lawsuit, the Settlement, and your legal rights.

The lawsuit involved in the Settlement is *Albert Talone, D.O., Craig Wax, D.O., Richard Renza, D.O. and Roy Stoller, D.O., Individually and on behalf of all others similarly situated v. The American Osteopathic Association*, Case No: 1:16-CV-04644 (NLH)(JS) (D.N.J.).  Judge Noel L. Hillman and Magistrate Judge Joel Schneider of the United States District Court for the District of New Jersey are overseeing the lawsuit.   The people who filed the lawsuit are called the "Plaintiffs."   The American Osteopathic Association ("AOA") is the "Defendant."

Once the Settlement becomes final, you will be bound by the terms of the Settlement.  You will have no right to sue AOA for any claim that was or could have been included in the litigation, INCLUDING ANY CLAIM FOR MONETARY DAMAGES.

**2.   What is this litigation about?**

The lawsuit challenges the AOA's policy that holders of an AOA Board certification must also purchase membership in the AOA in order to maintain their Board certification and alleges members of a sub-class were harmed by allegedly fraudulent statements or intentional omissions made by the AOA regarding the AOA's Osteopathic Continuous Certification program ("OCC") and the requirement that holders of "lifetime" Board certification purchase membership in the AOA to maintain their "lifetime" certificates. The complaint in the lawsuit is posted on the website [url] and contains all the allegations and claims asserted against the AOA.  The AOA denies any wrongdoing or liability but has agreed to settle the lawsuits to avoid the costs and risks of litigation.

**3.   Why is this a class action?**

In a class action, one or more people, called "Class Representatives," (in this case, four DOs who have purchased membership in the AOA) sue on behalf of themselves and other people with similar claims. Together, all the people with similar claims are members of a "Settlement Class."  You may not exclude yourself from the Settlement Class or any Sub-Class.

**4.   Why is there a Settlement?**

The Court has not decided which side is right.  Instead, both sides have agreed to a Settlement.  By agreeing to the Settlement, both sides avoid the costs and uncertainty of a trial, and Settlement Class Members receive the benefits described in this notice.  The proposed Settlement does not mean that any law was broken or that the AOA did anything wrong.  The AOA denies all legal claims in this case.  The Class Representatives and their lawyers ("Class Counsel") think the proposed Settlement is best for everyone who is affected.

## WHO IS PART OF THE SETTLEMENT

If you received notice of the Settlement addressed to you, then you may be a Settlement Class Member. But even if you did not receive notice, you may be a Settlement Class Member, as described below.

**5.     Who is included in the Settlement?**

You are a member of the Settlement Class if you were an AOA member or paid dues on behalf of an AOA member at any time since August 1, 2012. You may also be a member of one or more Sub-Classes if you (1) have held one or more AOA Board certifications since August 1, 2012; or (2) were given "lifetime" Board Certification.

**6.     What if I have questions about the Settlement?**

If you have any questions about the Settlement, visit the Settlement website at [url].  You may also send questions to the AOA's Customer Resource Center at CRC@osteopathic.org, and you can call the Customer Resource Center at 888-626-9262 (888-62- MY AOA).

**7.     What if I do not like the Settlement?**

If you do not like the Settlement, you may object as provided in Question 13.  **However, once the Settlement becomes final, you will be bound by its terms, including its releases.  You will have no right to sue AOA for any claim that was or could have been included in this litigation.  You will be barred from making any claim of any kind, including a claim for monetary damages.**

## THE SETTLEMENT BENEFITS

**8.     What does the Settlement provide?**

- Rescission of the Challenged Rule: The AOA shall permanently decouple AOA Board certification from membership in the AOA, such that, as of the Effective Date of the Settlement, AOA Board certification shall no longer be conditioned upon membership in the AOA;

- Termination of Board Certification Maintenance Fee: The AOA shall, for the period from June 1, 2019 through May 31, 2022, terminate the Certification Maintenance Fee (currently $90 per certification) that the AOA currently charges AOA Board-certified DOs.  The Certification Maintenance Fee may be reinstated at any time after May 31, 2022, if so approved by the AOA House of Delegates ("HOD");

- Dues Reduction: The AOA shall reduce the Annual Regular Membership dues (currently $683) by $90 for the 12-month period beginning June 1, 2019 through May 31, 2020.  It shall not increase the Annual Regular Membership dues above that reduced amount for the period from June 1, 2020 through May 31, 2022.  Any changes to the amount of Annual Regular Membership dues after May 31, 2022, shall be determined by the HOD, in accordance with the AOA's Constitution and Bylaws;

- <u>Lifetime Certification Holders</u>: AOA will not require Board-certified DOs who received "lifetime" Board certification to participate in Osteopathic Continuous Certification ("OCC") or to remain members of AOA.  However, lifetime certification will continue to require a license to practice in good standing for the state or other jurisdiction in which the physician practices, specialty specific Continuing Medical Education identified by the certifying board, and no evidence of unethical or unlawful conduct by the Board-certified DO;

- <u>Continuing Medical Education ("CME")</u>: The AOA shall, for the period from January 1, 2019 through December 31, 2021, make available to all AOA members who purchase Annual Regular Membership two courses from its online CME programming on a complimentary basis, subject to an aggregate maximum of 12 CME credits each calendar year;

- <u>CME Acceptance for AOA Membership</u>: The AOA shall recognize accredited CME whether taken in person or online, for purposes of maintaining membership in the AOA and will not impose membership requirements as to the number of CME credits that may be taken online versus the number of CME credits that must be taken in person.  However, AOA specialty boards can identify requirements for the number of online or in person CME credits that must be taken to maintain AOA Board certification;

- <u>No Enforcement of CME Requirements for Non-Board Certified DO Members</u>: The AOA may maintain CME requirements as aspirational goals for members.  However, physicians will not lose membership in AOA as a result of failing to meet the CME requirement, provided that the physicians meet the CME requirements for the state(s) in which they practice;

- <u>Osteopathic Awareness Campaign Expenditures</u>: For each of the Fiscal Years June 1, 2019-2020 and June 1, 2020-2021, the AOA shall provide funding of not less than $2 million for the D.O. Osteopathic Physician Brand Identity Campaign, which refers to the campaign to promote "osteopathic medicine to a wide audience," described in detail on the AOA's website at: http://www.osteopathic.org/inside-aoa/about/Pages/doctors-that-DO-campaign.aspx;

- <u>Establishment of Independent/Private Practice DO Task Force</u>: The AOA shall establish a task force comprised of between five and seven members who are independent private practice DOs or DOs who practice in an independent private practice DO group, all of whom are engaged in direct patient care.  The membership of this task force will be determined at the sole discretion of the AOA Board of Trustees as long as the members meet the above qualifications. The task force will be treated like any other task force.  The task force shall be established for a minimum of three years;

- <u>Costs of Notice</u>.  The AOA shall bear the costs relating to notice to the Settlement Class and Sub-Classes.

- <u>Attorneys' Fees and Class Representative Service Payments</u>. The AOA has also agreed to pay a court-ordered award of attorneys' fees and costs, up to a total amount of $2,617,000, and that Class Counsel will request that service payments of up to $15,000 be paid to the four Class Representatives for their service on behalf of the whole Settlement Class.  These Service Payments will be paid out of the attorneys' fees.

**9.   When will I receive my benefits?**

Settlement Class Members will receive their benefits automatically, but only after the Court grants final approval to the Settlement and after any appeals are resolved (*see* "The Final Approval Hearing" below). If there are appeals, resolving them can take time.  Please be patient.

**10.   How can I receive these benefits?**

Settlement Class Members will receive benefits from the Settlement automatically.  Please contact the AOA [or the Settlement Administrator] if you change your address.

<div align="center">

**THE LAWYERS REPRESENTING YOU**

</div>

**11.   Do I have a lawyer in the case?**

The Court has appointed a law firm to represent all Settlement Class Members as "Class Counsel."  That firm is as follows:

| | | |
|---|---|---|
| Duane Morris LLP | 30 S. 17th Street, Philadelphia PA, 19103 | (215) 979-1000 |

You will not be charged for contacting these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

**12.   How will the lawyers and class representatives be paid?**

Class Counsel intend to request that the court approve up to $2,617,000 in attorneys' fees and costs, which, if approved, will be paid by the AOA.  These attorneys' fees would be in addition to the Settlement Benefits. Class Counsel will also request that special service payments of up to $15,000 be paid to the four Class Representatives for their service as representatives on behalf of the whole Settlement Class.  The Court will decide the amount to award.   Any Service Payments will be paid out of the attorneys' fees.

<div align="center">

**OBJECTING TO THE SETTLEMENT**

</div>

**13.   How do I tell the Court if I do not like the Settlement?**

If you are a member of the Settlement Class, you can object to any part of the Settlement, the Settlement as a whole, Class Counsel's requests for fees and costs, and/or the special service payments to the four Class Representatives.  To object, you must submit a letter that includes the following:

- Your name, address, email address, and telephone number;
- A statement that you were a member of AOA or paid dues on behalf of an AOA member at any time since August 1, 2012, with any available supporting information, such as your membership information, or the date, location, and dollar amount of the dues payment;
- A statement saying that "**I object to the settlement in the action Talone v. The American Osteopathic Association, Case No: 1:16-CV-04644 (NLH)(JS) (D.N.J.)**" or a similar

<div align="center">

</div>

statement clearly stating the case name and number of the action listed in Question 1 and a desire to object to the settlement;

- The reasons you object to the Settlement, along with any supporting materials;
- The name(s) of any lawyers who are representing you in your objection, or who have previously represented you in your objection;
- Whether you will attend or intend to testify (speak) at the Final Approval Hearing (see Questions 15 to 16);
- The name(s) of any lawyers who will represent you at the Final Approval Hearing;
- The name(s) of any witnesses you will ask to testify in support of your objection at the Final Approval Hearing; and
- Your signature.

**The deadline to object to the Settlement is [date].**

The requirements to object to the Settlement are described in detail in the Settlement Agreement in paragraphs 50-51. You must mail your objection to <u>each</u> of the following addresses, and your objection must be postmarked by [date]:

| Clerk of the Court | James Greenberg, Esq. | Jack R. Bierig, Esq. |
|---|---|---|
| U.S. District Court for the | Duane Morris LLP | Sidley Austin LLP |
| District of New Jersey | 1940 Rte. 70 East, Suite 100, | One South Dearborn |
| Mitchell H. Cohen Building & | Cherry Hill, NJ 08003 | Chicago, Illinois 60603 |
| U.S. Courthouse | JGreenberg@duanemorris.com | jbierig@sidley.com |
| 4th & Cooper Streets | | |
| Room 1050 | Seth A. Goldberg, Esq. | Jeff Lorell, Esq. |
| Camden, NJ 08101 | Duane Morris LLP | Saiber LLC |
| | 30 S. 17th Street | 18 Columbia Turnpike, Suite 200 |
| | Philadelphia, PA 19103 | Florham, Park NJ 07932-2266 |
| | SAGoldberg@duanemorris.com | jlorell@saiber.com |

## THE FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses and service payments for the class representatives. You may attend and you may ask to speak, but you do not have to do so.

**14. When and where will the Court decide whether to approve the Settlement?**

**The Court has scheduled a Final Approval Hearing on [date].** The Final Approval Hearing will be held at [time] at the United States District Court for District of New Jersey, Camden Vicinage, located at Mitchell H. Cohen Building & U.S. Courthouse, 4th & Cooper Streets, Camden, NJ 08101. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check [url] for updates. At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider any request by Class Counsel for attorneys' fees, litigation costs, and service payments to Class Representatives. If there are objections, the Court will consider them at that time.

WWW.[URL].COM

After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**15. Do I have to attend the hearing?**

No. Class Counsel will answer questions the Court may have. But you are welcome to attend the hearing at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you submitted your written objection on time, to the proper addresses, and it complies with the other requirements described in paragraphs 50 and 51 of the Settlement Agreement, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**16. May I speak at the hearing?**

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must send a letter saying that you intend to appear and wish to be heard. Your letter must include the following:

- Your name, address and telephone number;
- A statement that this letter is your "Notice of Intention to Appear" at the Final Approval Hearing for the AOA Settlement;
- The reasons you want to be heard;
- Copies of any papers, exhibits, or other evidence or information that you will present to the Court; and
- Your signature.

You must send copies of your Notice of Intention to Appear, postmarked by [date], to all addresses listed in Question 13.

## GETTING MORE INFORMATION

**17. How do I get more information?**

This notice summarizes the proposed Settlement. More details are in the Settlement Agreement. For a complete, definitive statement of the Settlement terms, refer to the Settlement Agreement at [url]. You also may write with questions to the AOA at [email address] or [mailing address] [or to the Settlement Administrator at [email address] or [mailing address] ].

**EXHIBIT 4**

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ALBERT TALONE, D.O., CRAIG WAX,
D.O., RICHARD RENZA, D.O., and ROY
STOLLER, D.O., individually and on behalf of
all others similarly situated,

            Plaintiffs,

            v.

THE AMERICAN OSTEOPATHIC
ASSOCIATION,

            Defendant.

**Civil Action No.: 1:16-cv-04644-NLH-JS**

**ORDER PRELIMINARILY CERTIFYING SETTLEMENT CLASSES,
GRANTING PRELIMINARY APPROVAL OF SETTLEMENT, AND
<u>APPROVING CLASS NOTICE</u>**

     **THIS MATTER** having been opened to the Court by Class Counsel, on behalf of Albert

Talone, D.O., Craig Wax. D.O., Richard Renza, D.O., and Roy Stoller, D.O. ("Plaintiffs" or

"Class Representatives") by way of their unopposed motion for preliminary approval of their

proposed settlement with the American Osteopathic Association ("AOA" and, with Class

Representatives, the "Parties") in the above Action;

     **WHEREAS**, the Court having reviewed and considered the motion for preliminary

approval and supporting materials filed by Class Counsel, and having also reviewed the court file

in this Action; and

     **WHEREAS**, this Court has fully considered the record and the requirements of law, and

good cause appearing;

**IT IS ON THIS** _____ day of _____, 2018, **ORDERED** that the settlement (including all terms of the Settlement Agreement and Release, dated _____, between Class Representatives and AOA, and exhibits thereto) (the "Agreement") is hereby **PRELIMINARILY APPROVED**.

The Court further finds and orders as follows:

1.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367, and venue is proper in this district.

2.     The Court has personal jurisdiction over the Class Representatives, all Settlement Class Members, and the AOA.

3.     The Agreement appears to be the product of serious, informed, non-collusive, and good faith negotiations between the parties.  The Agreement falls well within the range of reasonableness.  The Agreement has no obvious deficiencies.  The Agreement does not unreasonably favor the Class Representatives or any segment of the Settlement Class and Sub-Classes.

4.     Because the Agreement meets the standards for preliminary approval, the Court preliminarily approves all terms of the Agreement and all of its exhibits.

5.     The Court finds, for settlement purposes only, that all requirements of Fed. R. Civ. P. 23(a) and (b)(2) have been satisfied, including that the proposed Settlement Class and Sub-Classes are currently and readily ascertainable based on objective criteria.

6.     The Court certifies the Settlement Class, as follows:

> All persons who were members of AOA (regardless of membership category) and all persons or entities who paid dues on behalf of anyone who was a member of AOA at any time since August 1, 2012.

2

7.     The Court certifies the AOA Board Certified Sub-Class as follows:

All members of the Settlement Class that have held AOA Board certifications since August 1, 2012.

8.     The Court certifies the Lifetime Sub-Class as follows:

All members of the Settlement Class who were given "lifetime" Board certification.

9.     The Court hereby appoints the following Individuals as Class Representatives:

Albert Talone, D.O., Craig Wax. D.O., Richard Renza, D.O., and Roy Stoller, D.O.

10.     The Court conditionally certifies the proposed Settlement Class and Sub-Classes, and finds that the requirements of Rule 23(a) are satisfied, for settlement purposes only, as follows:

(a)     Pursuant to Fed. R. Civ. P. 23(a)(l), the members of the Settlement Class and Sub-Classes are so numerous that joinder of all members is impracticable.

(b)     Pursuant to Fed. R. Civ. P. 23(a)(2) and 23(c)(l)(B), the Court determines that there are common issues of law and fact for the Settlement Class and Sub-Classes, including, among others:

(i)     Whether the DO Board Certification Market and the Association Membership Market are separate product markets;

(ii)     Whether, during the relevant period, the AOA had market power in the DO Board Certification Market;

(iii)     Whether, during the relevant period, the AOA exploited its market power in the DO Board Certification Market by conditioning AOA Board certification on the purchase of annual membership in the AOA (the "Challenged Rule");

(iv)     Whether the Challenged Rule affected a substantial amount of interstate commerce and/or commerce in New Jersey;

(v)     Whether the Challenged Rule caused anticompetitive effects nationally and/or in New Jersey;

3

(vi)     Whether there were any procompetitive justifications for the Challenged Rule;

(vii)     Whether the AOA misrepresented the "lifetime" nature of the AOA Board certifications originally granted as such; and

(viii)     Whether the AOA's conduct violated Section 1 of the Sherman Act, Section 3 of the New Jersey Antitrust Act, and the New Jersey Consumer Fraud Act.

(c)     Pursuant to Fed. R. Civ. P. 23(a)(3), the Class Representatives claims are typical of the claims of each member of the Settlement Class and Sub-Classes, because their claims are based on the same allegedly unlawful conduct by the AOA.

(d)     Pursuant to Fed. R. Civ. P. 23(a)(4), the Class Representatives will fairly and adequately protect and represent the interests of all members of the Settlement Class and Sub-Classes, and the interests of the Class Representatives are not antagonistic to those of the Settlement Class and Sub-Classes.  Furthermore, the Class Representatives are represented by counsel that is experienced and competent in the prosecution of complex class action litigation.

11.     The Court further finds, for settlement purposes only, that the requirements of Rule 23(b)(2) are satisfied, namely that AOA has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole, and that the Class and Sub-Class are properly certified as mandatory, non-opt out classes.

12.     The Court finds that any of the Mailed Notice, Publication Notice, and Long-Form Notice on the Settlement Website, attached to the Agreement as Exhibits 1, 2 and 3, (1) are the best practicable notice; (2) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Lawsuit and their right to object to the proposed settlement; (3) are reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice; and (4) meet due process and all other applicable legal

4

requirements, including the requirements of Rule 23 of the Federal Rules of Civil Procedure, and accordingly the Court approves each Notice.

13.     This Court further approves the proposed methods for giving notice of the settlement to Settlement Class Members, as reflected in the Agreement and the motion for preliminary approval.  The Court has reviewed the notices attached as exhibits to the Agreement, and the notice procedures, and finds that the Settlement Class Members will receive the best notice practicable under the circumstances.  The Court specifically approves the Parties' proposal for the AOA to use reasonable diligence to identify potential Settlement Class Members and an associated address or email address in the AOA's records, and to use this information to mail or email (or, at AOA's discretion, to cause a Settlement Administrator to mail or email) Settlement Class Members notice via first class mail or email.  The Court also orders payment of notice costs as provided in the Agreement.  The Court finds that these procedures, carried out with reasonable diligence, will constitute the best notice practicable under the circumstances and will satisfy the requirements of Fed. R. Civ. P. 23(c)(2), Fed. R. Civ. P. 23(e)(l), and due process.

14.     The Court hereby appoints Duane Morris LLP as Class Counsel pursuant to Rule 23(g) and preliminarily finds that they fairly and adequately represent the interests of the Settlement Class and Sub-Classes.

15.     The Court directs that pursuant to Fed. R. Civ. P. 23(e)(2) a hearing will be held on _____, to consider final approval of the Agreement (the "Final Approval Hearing" or "Fairness Hearing") including, but not limited to, the following issues:  (1) whether the Action should be certified for settlement purposes only as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2); (2) whether the terms and conditions of the Agreement are substantively and procedurally fair, reasonable and adequate, and in the best interests of the Class; (3) whether

5

final judgment should be entered dismissing the Action with prejudice, releasing the Released Claims (as defined in the Agreement), and barring and enjoining prosecution of any and all Released Claims, including claims for damages; (4) Class Counsel's application for an award of attorneys' fees and costs; (5) Class Counsel's application for an award of service payments to the Class Representatives; and (6) any objections to the Settlement and/or the application of Class Counsel for an award of attorneys' fees and expenses. The Final Approval Hearing may be adjourned by the Court and the Court may address the matters set out above, including final approval of the Agreement, without further notice to the Settlement Class and Sub-Classes other than notice that may be posted at the Court and on the Court's and Settlement Administrator's websites.

16.     Persons wishing to object to the proposed Settlement and/or be heard at the Fairness Hearing shall follow the following procedures:

(a)     Objections to the Settlement and/or to the application for attorneys' fees and service awards must be electronically filed with the Court, or mailed to the Clerk of the Court, with a copy to Class Counsel and AOA's counsel. For an objection to be considered by the Court the objection must be: (1) electronically filed no later than 95 days after the entry of this Order preliminarily approving the Settlement; or (2) mailed first-class postage prepaid to the Clerk of Court, Class Counsel, and AOA's counsel, at the addresses listed in the Notice, and postmarked by no later than 95 days after the entering of this Order preliminarily approving the Settlement.

(b)     For an objection to be considered by the Court, the objection must also set forth:

(i)      that it relates to the Action, for which it shall be deemed sufficient to identify the Action;

(ii)     the objector's full name, address, email address, and telephone number;

6

(iii)    an explanation of the basis upon which the objector claims to be a Settlement Class Member;

(iv)    all grounds for the objection, accompanied by any legal support for the objection;

(v)    the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement, the application for Attorneys' Fees, or the application for Service Awards;

(vi)    the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

(vii)    a list of any persons who will be called to testify at the Final Approval Hearing in support of the objection;

(viii)    a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

(ix)    the objector's signature (an attorney's signature is not sufficient).

17.    The following are the deadlines for the following events:

| EVENT | DATE |
|---|---|
| Notice of Class Action Settlement Mailed and Posted on Internet ("Notice Deadline") (15 days from the date Preliminary Approval of the Settlement is granted) | |
| Notice of Class Action Settlement (CAFA Notice) | |
| Completion of Mailing Period (35 days from the date Preliminary Approval of the Settlement is granted) | |
| Postmark/Filing Deadline for Objections ("Objection Deadline") (95 days from the date Preliminary Approval of the Settlement is granted) | |
| Service/Filing Notice of Intention to Appear at Fairness Hearing (95 days from the date Preliminary Approval of the Settlement is granted) | |
| Affidavit of Compliance with Notice Requirements (14 days after Completion of | |

| | |
|---|---|
| Mailing Period) | |
| Filing Motion for Final Approval, Attorney Fees, Reimbursement of Expenses, and Service Awards To be Filed by Class Counsel (No later than 21 days prior to Objection Deadline) | |
| Fairness Hearing (at the Court's discretion) | |

18.     In the event that the settlement does not become effective for any reason, this Preliminary Approval Order and Judgment shall be rendered null and shall be vacated, and all orders entered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.  If the settlement does not become effective, the AOA and any Released Parties (as defined in the Agreement) shall have retained any and all of their current defenses and arguments thereto (including but not limited to arguments that the requirements of Fed. R. Civ. P. 23(a) and (b)(2) are not satisfied for purposes of continued litigation).   The Action shall thereupon revert immediately to its respective procedural and substantive status prior to the date of execution of the Agreement and shall proceed as if the Agreement and all other related orders and papers had not been executed.

19.     Nothing in this Preliminary Approval Order and Judgment, the Agreement, or any documents or statements related thereto, is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the AOA, or an admission of the propriety of class certification for any purposes other than for purposes of the current proposed settlement and Agreement.

20.     All other proceedings in the Action are hereby stayed until such time as the Court renders a final decision regarding approval of the proposed settlement.  No discovery with regard to the Action, or with respect to this settlement, shall be permitted other than as may be directed

8

by the Court upon a proper showing by the party seeking such discovery by motion properly noticed and served in accordance with this Court's Local Rules.   In addition, pending a determination on final approval of the settlement, all Settlement Class Members are hereby barred and enjoined from commencing or prosecuting any action involving any Released Claims.

21.	The Court shall retain continuing jurisdiction over the Action, the Parties and the Class, and the administration, enforcement, and interpretation of the Agreement.  Any disputes or controversies arising with respect to the Agreement shall be presented by motion to the Court.

_____
NOEL L. HILLMAN, U.S.D.J.

9